CASE 95—INDICTMENT—MARCH 11.

# Commonwealth v. McClelland.

### APPEAL FROM JEFFERSON CIRCUIT COURT.

1. REGISTRATION LAW CONSTITUTIONAL.—The Legislature has the power to enact a law requiring qualified voters to be registered before the day of election as a condition of the exercise of their right of suffrage, and such a law may be local in its application.

2. IT IS NOT ESSENTIAL TO THE VALIDITY OF A REGISTRATION LAW that it should contain a provision for an examination on the day of election, of the qualification of voters, who from sickness or other cause have been prevented from registering, and, therefore, if the law contains such a provision, it is no objection to it that it may be impossible for the person claiming the right to vote to furnish on the day of election the required evidence of his qualifications.

3. PERSONS ENTITLED TO VOTE.—A residence of one year in a county
next preceding the election by a male citizen of the age of twenty-
one years gives him a right under the Constitution to vote in any
precinct of the county of which he may have been a resident for
sixty days next preceding the election, and a registration law is
not valid if it requires other qualifications to entitle a person to,
register.

The statute considered in this case provides that "every person
shall be entitled to be registered who would be entitled to vote at
the next succeeding August election; that is to say, every male
citizen who on that day shall have attained the age of twenty-
one years, and shall have resided in the State two years, or in
the city one year, and in the precinct in which he offers to register
sixty days." *Held*—That the latter or explanatory clause of this
section is in conflict with the Constitution, and inconsistent with
the first part of the clause; but, as the first part is complete in
itself, the latter part may be severed and stricken out without
invalidating the residue of the section.

4. AN INDICTMENT FOR PERJURY alleged to have been committed in
making a false affidavit under the registration law, as to the resi-
dence of a voter, was defective in failing to make it appear
whether the place at which the defendant stated the person offer-
ing to vote resided was or was not in the limits of the precinct in
which it is charged he voted.

A. P. HUMPHREY, W. O. HARRIS AND J. P. HELM FOR APPEL-
LANT.

1. It is competent to the Legislature to provide machinery for the
ascertainment of the constitutional qualifications of electors on a
day or days anterior to the election day. (Cooley's Const. Limit.,
page 601; 12 Pick., 491; Page v. Allen, 58 Pa. St., 344; Patterson
v. Barlow, 60 Pa. St., 75; Dills v. Kennedy, 49 Wis., 558; Clarke
v. Robinson, 88 Ill., 504; Edmunds v. Banbury, 28 Iowa, 271;
People v. Kopple, 16 Mich., 344; Daggett v. Hudson, 3 N. E.
Reporter, page 538.)

2. Such a law applicable alone to the city of Louisville does not vio-
late the constitutional provision that "elections shall be free and
equal." (Patterson v. Barlow, 60 Pa. St.; State v. Butts, 31 Kan.;
McMahon v. Savannah, 66 Ga., 217.)

3. No one will be allowed to impeach the constitutionality of a law,
or any part of it, unless he is injured thereby. (Marshall v. Don-
ovan, 10 Bush, 691; Cooley's Const. Limit., 164; Commonwealth
v. Wright, 79 Ky., 23; Thompson v. Carr, 13 Bush, 218.)

4. A law may be constitutional in part and unconstitutional in part,
and wherever the unconstitutional part may be stricken out, and
leave the remainder of the statute complete, that only which is.

Commonwealth v. McClelland.

obnoxious to the Constitution will be declared void, and that which is not obnoxious will be declared valid. (Cooley's Const. Limit., side page, 177.)

KOHN & BARKER FOR APPELLEE.

1. A registration law to be valid must be *reasonable*, *uniform* and *impartial*. (Capen v. Foster, 12 Pick., 485; Page v. Allen, 58 Pa. St., 54; State v. Barlow, 60 Pa. St.)

2. The Legislature has no right to pass a registration law applicable to the city of Louisville alone; such a law violates the provision of our Constitution that "all elections shall be free and equal." (Constitution of Kentucky, article 13, section 7.)

3. The law under consideration in this case is invalid, because it prescribes for voters qualifications different from those prescribed by the Constitution. (Constitution, article 2, section 8.)

4. The general words of the Act prescribing the qualifications of voters are limited by the particular words following. (Dwarris on Statutes, pages 201, 217, 272 and 273; United States v. Irvin, 5 McLean, 178.)

5. The General Assembly can not in any way change the qualification of voters, and if they attempt to do so their action is void. (State v. Canada, 73 N. C., 199; State v. Baker, 38 Wis., 79; Dills v. Kennedy, 49 Wis., 558; Rison v. Farn, 24 Ark., 161; State v. Staten, 6 Cold., 233.)

6. A registration law cannot, under the color of regulating the mode of exercising the elective franchise, subvert or restrain the right itself. (Monroe v. Collings, 17 Ohio St., 685; Dills v. Kennedy, 49 Ark., 555; Davis v. McKenly, 5 Nev., 304.)

7. The statute under consideration as effectually denies to a large class of citizens the right of suffrage as if it had done so in express words. Such restrictions will not be tolerated. (People v. Canada, 73 N. C., 223; Edmonds v. Branbury, 28 Iowa, 267; Webster v. Byrnes,. 34 Cal., 273; Byler v. Asher, 47 Ill., 101; Rev. Stats. of New Jersey, 364, section 152; Arkansas Stat., 471, section 2328.)

W. R. KINNEY AND NOCK & JONES ON SAME SIDE.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellee was indicted for the crime of perjury, charged to have been committed by him in willfully and corruptly making a false statement on oath administered under an act of the General Assembly, entitled "An act to provide for registration of voters

Commonwealth v. McClelland.

in the city of Louisville," approved April 23, 1884.
But a demurrer to the indictment having been sus-
tained, the Commonwealth prosecutes this appeal,
which requires a decision as to the constitutionality
of the act as well as the sufficiency of the indict-
ment under it.

In considering the first question it is necessary to
inquire—

1. Whether the General Assembly has the power
to enact any law requiring qualified voters to be
registered before the day of election, as a condition
of the exercise of their right of suffrage. And if so,

2. Whether such law is valid when made local
and not general in its operation.

3. Whether the whole or any part of the act in
question is invalid.

The right to vote is conferred and the qualifica-
tions of voters subject to the modification made by
article 15 of the Constitution of the United States,
are prescribed by section 8, article 2, of the State
Constitution, which is as follows:

"Every free white male citizen of the age of twen-
ty-one years, who has resided in the State two
years, or in the county, town or city in which he
offers to vote one year next preceding the election,
shall be a voter; but such voter shall have been for
sixty days next preceding the election a resident
of the precinct in which he offers to vote, and he
shall vote in said precinct and not elsewhere."

The Constitution requires the General Assembly to
divide or cause to be divided into convenient elec-
tion precincts every county, and also each city or

vol. 83.—44

town that has the number of qualified voters equal
to the fixed ratio of representation; it prescribes,
the day and between what hours of the day all elec-
tions by the people shall be held; and requires that
in all such elections the votes shall be personally
and publicly given *viva voce*, except dumb persons,
may vote by ballot.  But in respect to the officers,
authorized to hold elections, and to determine the
result of elections by the people, and the rules by.
which they are to be governed in the discharge of
such duties; and in respect to the officers by whom,
the mode, and the time, whether before or on the
day of election, those entitled to vote shall be ascer-
tained and separated from those not so entitled, the
Constitution is silent.

It is thus apparent that the actual exercise of
the right to vote by those possessing the constitu-
tional qualifications is made to depend upon needful.
rules and regulations which the General Assembly
may, from time to time, provide by law, and which:
section 4, article 8 of the Constitution makes its
duty to provide.  That section is as follows:

"Laws shall be made to exclude from office and
from suffrage those who shall thereafter be convicted
of bribery, perjury, or other crimes or high misde-
meanors.  The privilege of free suffrage shall be
supported by laws regulating elections, and prohib-
iting, under adequate penalties, all undue influence
thereon from power, bribery, tumult, or other im-
proper practices."

Free suffrage must, however, be understood as a
privilege restricted to persons possessing the qualifi-

cations prescribed by section 8, article 2, modified in the manner mentioned, and who have not, for the causes stated in the section just quoted, forfeited it. Consequently, to permit persons not having such qualifications to vote at elections by the people, thereby neutralizing or counteracting the influence of those who have, would not only corrupt but impair the value, and tend to entirely defeat the purpose of the elective franchise.

It thus becomes just as necessary that illegal voting be prevented as that legally qualified voters be protected in the enjoyment of the privilege; but to secure free and fair elections, it is indispensable that an examination of the qualifications of each person claiming the privilege of voting should be made by a competent tribunal at some time before his vote is polled, which clearly the Legislature has the power to fix; for the injunction that, for the support of free suffrage, laws shall be passed regulating elections and prohibiting all undue influence thereon, implies legislative discretion as to the time when and the manner in which the examination shall be made, and the right of each person to vote determined; and it is only when such laws add to the qualifications prescribed by the Constitution, or impose unreasonable conditions of the exercise of the privilege of voting, that courts can interfere.

It is true that, until the passage of the act in question, there never was in this State any law, general or local in its application, requiring an examination at any other time or place or by any other

officers than on the day of election, at the place of voting, and by those conducting the election; but the non-exercise of the power proves nothing more than that the exigency requiring a registration of qualified voters before the day of election has not, in the opinion of the Legislature, heretofore existed. As said by Cooley in his work on Constitutional Limitations, 602: "The provisions for a registry deprives no one of his right, but is only a reasonable regulation under which the right may be exercised. Such regulations must always have been within the power of the Legislature unless forbidden." And he cites in support of his position numerous authorities, including the leading case of Capen v. Foster, 12 Pick., 485, decided as early as 1832. On the other hand, we have been referred to no case where such law is now held to be invalid.

2. If, as we think is beyond question, the Legislature may, without infringing the constitutional privilege of suffrage, enact a general registration law, the only way to avoid the conclusion that it may also, in its discretion, enact such law, local in its operation, is to make it appear that some provision of the Constitution or some right of the qualified voter would be violated in the latter case and not in the former; for the end sought in each case is the support of the privilege of free suffrage, which involves the rigid and certain exclusion of those not entitled to vote, as well as the protection of those in the exercise of the privilege who are; and it is not simply a question of power, but is made the duty of the Legislature to adopt such regulations,

whether general or local, as may be necessary to attain that end in each and every part of the State.

It is, however, contended by counsel, that a local registration law, like the one under consideration, which prescribes rules to govern the exercise of the right of suffrage different from those established in other portions of the State, violates section 7, article 13, which provides "that all elections shall be free and equal."

What are free and equal elections in the meaning of the Constitution?

They certainly are not such as may be secured by the indiscriminate exercise of the right of suffrage, without regard to qualifications or regulations necessary to test and determine the right of those who offer to vote. Nor can elections be considered free and equal when in a portion of the State they may be conducted under the general law comparatively free from the influence of force and fraud, while in another portion, for the want of more suitable and effective regulations than are provided by the general laws, the timid and weak are deterred by violence or tumult from attempting to vote; and illegal votes, added to those influenced by bribery, constitute a balance of power, and often a majority of the whole number given.

Elections are free and equal only when all who possess the requisite qualifications are afforded a reasonable opportunity to vote without being molested or intimidated, and when the polls are in each county and in each precinct alike freed from the interference or contamination of fraudulent voters.

In the country and small towns, where comparatively few persons offer to vote who are strangers to officers of elections, or who can not be readily identified, the necessary examination and test of qualifications may be made on the day of election at the voting places without much hinderance or risk of imposition. But in large cities, where there are greater temptations and facilities for illegal voting, always producing confusion and disorder, it is often impossible for officers of elections, without previous registration of qualified voters, to either prevent fraud or afford to those entitled the opportunity to safely, quietly, and promptly cast their votes. And from necessity other and more effectual regulations than are provided by the general law, or than are required elsewhere, or a majority of the people of the State would probably be willing to adopt, must be provided for such places in order to secure therein free and equal elections in the meaning of the Constitution as we understand it. Such regulations would not, as erroneously argued by counsel, be in any sense qualifications additional to those prescribed by the Constitution, or different from those required of voters elsewhere in the State, but simply the means by which more certainly and effectually to support free suffrage; and as such they are authorized, and wherever necessary, required by the Constitution.

In our opinion we are not authorized to hold a registration law invalid upon the sole ground that it is local in its application; and this view seems to be in accordance with the current of authority in this country.

The act in question provides for the appointment of officers of registration for each precinct in the city, who are required to attend at the voting place for three successive days previous to each election, and to register all qualified voters who personally appear before them and apply for registration.

Section 6 of the act is as follows: "Every person shall be entitled to be registered who would be entitled to vote at the next succeeding August election; that is to say, every male citizen who, on that day, shall have attained the age of twenty-one years, and shall have resided in the State two years, *or in the city* one year, and in the precinct in which he offers to register sixty days," etc.

It seems to us that the latter or explanatory part of the section quoted is not only inconsistent with the first part, but in direct conflict with section 8, article 2 of the Constitution. According to the plain language of the Constitution, a residence of one year in Jefferson county next preceding the election by a male citizen of the age of twenty-one years, gives him a right to vote in any precinct of that county of which he may have been a resident for sixty days next preceding the election, and there is nothing in the act which would prevent a person who has resided in the city of Louisville ten months from voting in any precinct in Jefferson county, outside the city, to which he may remove, and in which he may reside the residue of the year next preceding the election.

But as the act stands, a residence in Jefferson county outside the city to within sixty days of one

·year does not avail a person removing to the city, although he may reside in one of the precincts. thereof the remainder of the year next before the election. The bare statement of the unequal and unjust effect of such an interpretation of the Constitution is enough to condemn it. But the two parts of the section are not essentially connected in substance; and, as the first part is complete in itself, the latter may, according to an accepted rule of construction, be severed and stricken out without destroying the sense or invalidating the residue of the section quoted.

By section 14 it is provided that the registration books shall be produced at the several precincts in the city when the polls are opened on the day of election, and "at said election no vote shall be received, unless the name of the person offering to vote is on the registry provided in this act, or unless he produce before the officers of election his written affidavit, stating that he was necessarily absent, or that he was ill and unable to attend, or that some named member of his family was so ill as to require his constant attention, such absence or illness covering the period allowed for registration, and stating facts showing him to be a qualified voter of the precinct, and also the facts in reference to his residence required to be entered on the register; and shall also prove, by the written affidavit of a registered voter of the precinct, who is a householder, that he knows such person to be a registered voter, and stating the facts in reference to such person's place of residence required to be entered on the register."

The objection made to the portion of the section quoted is the difficulty in some cases of making the required proof, whereby, as argued, persons may be embarrassed in the exercise of their right, and occasionally debarred entirely. But if, by the failure of a person to appear before the officers of registration at the time appointed by law, it becomes necessary, in order to save his right to vote, that an exception be made in his favor, we do not think he has a right to complain of regulations adopted for the purpose, and which the Legislature deems necessary to shut out fraudulent voting. Moreover, the question is made, which is proper to decide, whether, to make the act valid, it is indispensable that there should be any provision for an examination on the day of election of the qualification of voters.

It would seem that the right of the Legislature to enact a registration law being conceded, and the reasons and importance of it being recognized as vital and urgent, there exists no necessity or propriety for engrafting upon it any provision which opens the door for the very evils it was intended to guard against.

The Constitution provides that each election by the people shall continue but one day, which results in inevitably depriving those who are absent, from any cause, on the day of election, of the right to vote; yet the evils which would result in various ways from a longer continuance than one day are to be avoided, even if thereby some persons are prevented for the time being from voting. By the act under consideration three days are given in which

every person in the city qualified to vote has a reasonable time in which to have his name put on the list. It might, perhaps, be proper to make provision for the registration at some other time, before the day of election, of those unavoidably absent during the three days; but we do not perceive how the constitutional privilege of a qualified voter is taken from him when he is afforded a reasonable opportunity before the election to register. We, however, do understand how many persons who are ready and desire to vote may be kept from the polls by tumult, violence and fraud on the day of election.

Except in respect to the objectionable part of section 6 referred to, none of the provisions of the act are invalid; those parts of it in relation to the evidence, which may be heard as to qualifications of voters, being similar to provisions in the general law regulating elections that have never been called in question.

But the indictment being for perjury, is defective, for the reason that it does not appear therefrom whether the place at which appellee stated in his affidavit Campbell resided was or was not in the limits of the precinct in which he, Campbell, is charged to have voted, and for that reason the judgment must be affirmed.