CASE 101—MANDAMUS—NOVEMBER 11.

# City of Owensboro v. Hickman, &c.

APPEAL FROM DAVEISS CIRCUIT COURT.

THE LEGISLATURE MAY PASS REGISTRATION LAWS, EVEN OF A LOCAL CHARACTER, if they merely regulate in a reasonable and uniform manner how the privilege of voting shall be exercised. But a registration law which, under the color of regulating the manner of voting, really subverts the right, as by prescribing a qualification for the elector in addition to those provided by the Constitution, will not be held valid.

A registration law for the city of Owensboro, which provides for but one registration within a year, at which only those qualified to vote at the succeeding August election can register, deprives electors who may not be qualified to vote at the August election, but who may be qualified to vote at subsequent elections within the year, of the right to vote at such subsequent elections, and is, therefore, invalid.

W. T. OWEN, W. N. SWEENEY FOR APPELLANT.

No brief in record.

POWERS, ATCHISON & MILLER FOR APPELLEES.

No brief in record.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The appellees, who are voters in the city of Owensboro, and also candidates for certain city offices, which, under the charter of 1882, should be filled by an election to be held on the first Monday in December, 1890, sue for themselves and the other citizens of the place to

compel, by mandamus, the appellant, Joseph Lee, as mayor, to make proclamation for the election, and the other appellants, as members of the city council, to select election officers in conformity to the charter provisions. This they are bound to do unless the legislative acts of May 9 and May 13, 1890, providing for a registration of voters in the city, and for voting by ballot, are valid. This is affirmed by the appellants, and denied by the appellees.

The two acts, although passed at different times, but at the same legislative session, relate to the same general subject, are dependent upon each other, and must be treated, as to the question now presented, as one law. The ballot act assumes that a registration has been made. The voting is required to conform to it. The election by ballot depends upon a compliance with the provisions of the registration act. If it be invalid, both must fail.

The appellants say they were enacted without their knowledge; that they did not learn of them until it was too late to provide for a registration for any election in December, 1890, and that by their provisions none can now be had until July, 1891; that, as by their terms, no one can vote unless he be registered, there can, therefore, be no election, as there has been no registration, and the mayor can not, therefore, be required to issue any proclamation for an election, or the council be compelled to select officers for one, but that the present city officers, by the terms of the city charter, hold over until their successors are chosen. The question, therefore, to be determined is the constitutionality of the registration law. · If it be doubt-

ful, the action of the Legislature must be upheld. The law provides that the common council shall appoint registration officers at its first regular meeting in June of each year. They are to make the registration on the first Monday in July, and the two succeeding days, save the fourth day of the month, is not to be one of them; and every person is entitled to be registered who would be entitled to vote at the succeeding August election.

The provisions of the act apply to all elections, whether municipal, county or State, and authorize but one registration a year, it to govern in all the elections occurring within a year from its making, in which the citizens of Owensboro participate. If the name of the voter be not on the registry made in July, then he can not vote, whether he wishes to do so at the State election in August, or the Congressional election in November, or the municipal election in December, or at any election, special or otherwise, which may be held for any purpose within a year from the registration. The act says: "No vote shall be received unless the name of the person offering to vote is on the registry provided in this act." No person can be registered unless he personally appears before the officers of registration, and no mode is provided whereby a voter can in any way manifest his right to vote, if he fails to register in July. He is deprived of the privilege as to all elections for a year from that time.

If it be true, as suggested in the opinion of the judge below, that in some elections the citizens of the city do not vote separately, but that votes are

cast both by those living within and without the city, then some of these voters will be governed by a regi-- istry, and others not. Voters living within the city will not be allowed to vote in these elections if un- registered, while those living outside will be permit- ted to do so, although unregistered. Waiving this difficulty, if the statement in the opinion be correct, in the execution of the law, let us consider it in some other respects.

It may now be regarded as settled law that in the absence of constitutional inhibition, the Legislature may pass registration laws, even of a local character,. if they merely regulate, in a reasonable and uniform manner, how the privilege of voting shall be exer- cised. It was so held in the leading case of Capen v. Foster, 12 Pick., 485, and the courts of many of the States have so decided. (Byler v. Asher, 47 Ill., 101; Edmonds v. Banbury, 28 Iowa, 267; Auld v. Walton, 12 La. Ann., 129; Hyde v. Brush, 34 Conn.,. 454; State v. Baker, 38 Wisc., 71; Patterson v. Bar- low, 60 Pa. St., 54; Monroe v. Collins, 17 Ohio St.,. 665; Commonwealth v. McClelland, 83 Ky., 686.)

It is merely providing machinery for ascertaining,. prior to the election, who are the legal voters. It is; only furnishing a reasonable regulation under which the right is to be exercised. The true theory upon which these laws are based is, that they must not. impair or abridge the elector's privilege, but merely regulate its exercise by requiring evidence of the right. The right can not be impaired, but it may be regu- lated. Evidence as to it may be required consistent. with the right itself. The purpose is to prevent;

abuse of the privilege and to guard the purity of our elections. Looking at them in this light, their importance, and indeed necessity in densely populated localities, is evident. They rid the election officers of the duty of determining difficult questions in haste and confusion upon the election day, and by means of them it is known in advance who will claim the privilege of voting. They serve, therefore, to give peace and purity to elections, and should be upheld, unless clearly violative of constitutional right.

It is the constitutional duty of our Legislature to regulate elections. The Constitution is silent as to how or when it shall be ascertained who are entitled to vote. It is a privilege more than a right. Some persons are not entitled to exercise it, and it is, therefore, the right and duty of the Legislature to provide in such way as to it may seem best, provided it be constitutional, a mode of ascertaining who are legal voters. This is indispensable to free and fair elections, and the ascertainment of it by means of a uniform and reasonable registry law is but an exercise by the Legislature of a proper power. It creates only a condition to the exercise of the privilege. Some inconvenience or hardship will result from any law looking to this end. All human work is imperfect. The elector is invested by the Constitution with the privilege of voting. It is the sign of sovereignty in him. Yet, for various reasons and without his fault, he may be unable to exercise it upon the day of the election; he may be unable to go to the voting place, and yet no one will claim that the law fixing a day for the election, or requiring the voter's presence at

the polls as a condition of the exercise of his right
of suffrage, is void upon the ground that he was then
unable to vote. If he be afforded a reasonable op-
portunity before the election to register, it is but a
reasonable regulation for the exercise of the privi-
lege. A registration law, however, will not be held
valid which, under the color of regulating the man-
ner of voting, really subverts the right. If, for in-
stance, it prescribes a qualification for the elector, in
addition to those provided by the Constitution, it will
be declared invalid. In the language of one writer,
to be upheld "it must be regulation purely, and not
destruction."

Mr. Cooley says : "All regulations of the elective
franchise, however, must be reasonable, uniform and
impartial. They must not have for their purpose,
directly or indirectly, to deny or abridge the consti-
tutional right of citizens to vote or unnecessarily to
impede its exercise. If they do, they must be de-
clared void." (Cooley's Con. Lim., page 602.)

Section 8, article 2, of our State Constitution pro-
vides:

"Every free white male citizen of the age of twenty-
one years, who has resided in the State two years, or
in the county, town or city in which he offers to vote
one year next preceding the election, shall be a voter ;
but such voter shall have been for sixty days next
preceding the election a resident of the precinct in
which he offers to vote, and he shall vote in said pre-
cinct, and not elsewhere."

Guided by the rules above indicated, let us see if
the registration law now before us contravenes this

constitutional provision; whether it is unreasonable, and really denies the privilege of voting instead of regulating the manner of its exercise. As already stated, it provides for but one registration within a year. It must be made within three days, and in July of the year, and only those can register who may be qualified to vote at the succeeding August election. It is to determine the right to vote at any and all elections for a year from that time, and those who can not so register are denied the privilege of voting for a year thereafter. This is very different from the provisions of the registration law which was considered by this court in the case of the Commonwealth against McClelland, *supra.*

It is evident that under the provisions of the law now in question several classes of voters, although constitutionally qualified, will be deprived of the privilege of voting for a year, and without any fault upon their part. Those who have been prevented by sickness or absence from registering in July; those otherwise qualified, but who have resided in the city less than sixty days before the August election; those who may remove to the city after the August election, but may be qualified to vote at subsequent elections occurring during a year following the registration; those who had not become of age at the August election, but have before the other elections within the year, and possibly other classes, are all deprived of the right to vote at any election held within a year of the time of registration. Such a law strikes down the right itself, and is not a mere regulation of it. Containing no provision for special registration, it,

instead of facilitating and securing the privilege, and guarding against fraud and corruption, not only impedes, but actually subverts and destroys the right itself, and is in direct conflict with section seven of our Bill of Rights, which declares that "all elections shall be free and equal." While the Legislature may enact registration laws, yet they, like all other laws, must conform to the Constitution. It can not do indirectly what it can not do directly; and this statute as effectually deprives those we have enumerated of their constitutional privilege of voting as if it had declared in express terms that they should not do so. Although constitutionally qualified to vote in December, yet to do so they must have been qualified voters in the city in August preceding, and registered as such in July previous.

Such a registry law is not merely unreasonable, but it adds to the qualifications required of the voter by the Constitution, and abridges his rights under it. This being so, it is unconstitutional, and the judgment below so holding and awarding the mandamus,. is, therefore, affirmed.