CASE 86—ACTION BY J. D. COLLINS AGAINST J. C. B. YATES. COUNTY
CLERK, FOR AN INJUNCTION TO TEST THE VALIDITY OF THE REGIS-
TRATION LAW.—SEPTEMBER 28.

# Yates (County Clerk) v. Collins.

### APPEAL FROM KENTON CIRCUIT TOURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

ELECTIONS—QUALIFICATIONS OF VOTERS—PRODUCTION OF REGISTRATION
CERTIFICATES—ISSUANCE BY COUNTY CLERK—PRESERVING AFFI-
DAVITS.

1. Act Feb. 11, 1904 (Acts 1904, p. 31, c. 6), requiring a
voter, as a condition of voting, to produce to election officers,
when he presents himself to vote, a certificate of registration
from the registration officers, or, in case of its loss, a duplicate
certificate from the county clerk, for which latter certificate
he must pay fifty cents, does not add to the qualifications pre-
scribed by Const., sec. 145, providing that every male citizen
over twenty-one years old, having a residence for a certain time,
and not an idiot, or insane, or convicted of certain crimes, shall
be a voter, but is authorized by section 147, providing that the
mode of registration shall be prescribed by the General Assembly.
2. Act Feb. 11, 1904 (Acts 1904, p. 31, c., 6), is not open to the objec-
tion of allowing the county clerk to issue a duplicate regis-
tration certificate in lieu of one lost by a voter, without other
proof of such loss than his mere affidavit; the registration books
being on file in the county clerk's office from the time they
are completed and returned by the registration officers, and it
clearly being the clerk's duty to refuse a certificate in lieu of
one claimed to be lost if the name of applicant does not appear
therein.
3. Under Act Feb. 11, 1904, (Acts 1904, p. 31, c., 6), providing that
a voter, on filing before the county clerk an affidavit showing
loss of his registration certificate, may obtain a duplicate cer-
tificate, the affidavit on being filed becomes a record in the clerk's
office, and is to be preserved like other records.
4. Act Feb. 11, 1904 (Acts 1904, p. 31, c., 6), amending the statute
for registration of voters, is not unconstitutional because not pro-
viding penalties, though the penalties provided by the amended

Yates (County Clerk) v. Collins.

statute will not cover all offenses that may arise under the statute as amended.

5. Act Feb. 11, 1904, (Acts 1904, p. 31, c., 6), relative to registration of voters, is not invalid because failing to provide for issuance by the county clerk of original certificates of registration to persons registered by him during the three days of supplemental registration provided for by Ky. St. 1903, secs. 1498, 1499. The county clerk being the only officer authorized to register voters during such time, the statute may be construed as authorizing him to issue certificates of registration to the voters then admitted to registration by him.

6. Const. sec. 147, requires the General Assembly to provide by law for the registration of voters in cities and towns having a population of $5,000 or more, and allows it to provide by general law for the registration of other voters in the State. HELD, that such section did not require the Legislature to provide for the registration of all voters not residing in cities and towns having a population of 5,000 or more, in case it required any of such voters to register, but that the Legislature was entitled to classify such voters by general laws, and to exempt voters residing in the country from registration, while requiring those residing in cities and towns to be registered.

FURBER & JACKSON AND LEWIS McQUOWN, FOR APPELLANT.

An act of the Legislature pursuant to an express power from the Constitution is not subject to review by the judicial department.

AUTHORITIES CITED ON THIS POINT.

Cooley on Const. Limitations, 7th Ed., 232, 237, 239, 228; U. S. v. Cruikshank, 92 U. S., 549, 23 Law Ed., 590; U. S. v. Petersburg Judges of Election, 1 Hughes, 94; Fed. Cases, 16036; U. S. v. Crosby, 1 Hughes, 456; Fed. Cas., 14893; Ex Parte Seabold, 100 U. S., 394; 25 Law Ed., 725; State Ex Rel Lamar v. Dillon, 32 Florida, 545; 22 L. R. A., 124, 135, 141; State v. Black, 54 New Jersey Law, 456, 16 L. R. A., 769; Works on Courts and their Jurisdiction, p. 191; Edmunds v. Banbury, 28 Iowa, 272. Gillenwater v. Mississippi R. R. Co., 13 Ill., 1; Malby v. City of Marietta, 11 Ohio St. 636; Kenneen v. Wells, 144 Mass., 497, 59 Am. Rep., 105; Dorman v. State, 34 Ala., 216; Winter v. Montgomery, 65 Ala., 403; Moore v. Sharp, 98 Tenn., 496; Cusick's Election 136 Pa. St., 468; Southerland v. Morris, 74 Md., 326.

BURTON, VANCE AND DAVID W. FAIRLEIGH, COUNSEL FOR AP-
PELLEE.

1. It is a fundamental proposition that the Legislature has no
power to add to or to take from the qualifications of voters, which
are provided by the Constitution.

2. While the Legislature is authorized by the Constitution to
make registration laws, such laws must be confined to the mode
of conducting the registration, and beyond this the Legislature
can not go. Under the guise of a registration law it can not im-
pose additional qualifications, nor impose such unreasonable regu-
lations as will impede the right of suffrage.

3. It is impossible to forecast the various methods which can
and will be resorted to, under this act, to debauch the ballot box.
There is no penalty whatever provided against traffic in registered
certificates.

4. We submit that the provisions of the amendatory act are
not regulative of the mode of registration at all, but provide an
additional qualification, and in all its provisions the act is un-
reasonable, unconstitutional and void.

OPINION OF THE COURT BY JUDGE SETTLE—REVERSING.

This action was instituted in the Kenton circuit court by
the appellee, J. D. Collins, against the appellant, John C.
B. Yates, clerk of the Kenton county court, to restrain him
by injunction from carrying out the provisions of the act of
the General Assembly of Kentucky approved February 11,
1904, entitled "An act to amend an act, entitled An act to
regulate elections in this Commonwealth, approved June 30,
1892." Acts 1904, p. 31, c. 6. It is conceded that the ap-
pellee is a male citizen, resident, and taxpayer of Kenton
county, Ky.; that he possesses the qualifications, under the
Constitution and laws of the State, which entitle him to
vote at the approaching November election, and no objection
is urged against his right to institute this action. Nor do
we question his right to do so, for, in order to carry out the
provisions of the act supra, some expense for printing must
be incurred by each county of the State through its county

clerk, which is required to be paid out of the county levy. If, therefore, the act in question is unconstitutional, this expense should not be placed upon the counties, and a taxpayer like the appellee has such an interest in the matter as will entitle him to sue, as he has done, to test its constitutionality.

Section 145 of the Constitution provides: "Every male citizen of the United States of the age of twenty-one years, who has resided in this State one year, and in the county six months, and the precinct in which he offers to vote sixty days next preceding the elections, shall be a voter in said precinct and not elsewhere; but the following persons are excepted and shall not have the right to vote: (1) Persons convicted in any court of competent jurisdiction of treason, or felony or bribery in an election, or of such high misdemeanor as the General Assembly may declare shall operate as an exclusion from the right of suffrage; but persons hereby excluded may be restored to their civil right by executive pardon. (2) Persons who, at the time of the election, are in confinement under the judgment of a court for some penal offense. (3) Idiots and insane persons." Section 147 provides: "The General Assembly shall provide by law for the registration of all persons entitled to vote in cities and towns having a population of 5,000 or more; and may provide by general law for the registration of other voters in the State. Where registration is required, only persons registered shall have the right to vote. The mode of registration shall be prescribed by the General Assembly." So much of section 147 as provides for registration in cities and towns having a population of 5,000 or more is clearly mandatory, and in pursuance thereof the General Assembly, soon after the adoption of the present Constitution by the people of the State, enacted such laws as were

found necessary to carry this provision into effect. Kentucky Statutes, 1903, sections 1486 to 1506, inclusive. But no attempt was made by that body to exercise the discretion conferred by the same section of the Constitution to require registration of voters, other than those in cities and towns having a population of $5,000 or more, until the passage of the amendatory act now complained of by appellee. This act requires registration of all qualified voters in all the cities and towns of the State, without regard to class or population. It amends section 1488 of the original statute by adding to the end of that section the following: "The officers of registration shall issue a certificate of registration to each voter registering at the time he registers, showing that he has registered, and the date of his registry, and no person who is required to register under the provisions of this act shall have the right to vote at any election held in this Commonwealth until he shall have presented to the election officers his certificate of registration. Any person who has registered and whose certificate of registration has been lost or otherwise destroyed after the registration books, containing his registration, have been filed with the clerk of the county court, may, upon filing his affidavit before the county court clerk showing that fact, obtain a duplicate certificate of registration, and, upon filing such an affidavit before the county court clerk, it is hereby made the duty of the said clerk to issue said certificate, for which he may charge the applicant a fee of fifty cents, and said certificate shall entitle the person named therein to vote as if issued by the officers of registration and for the purpose of better enabling the officers of registration to carry out the provisions of this act, it is hereby made the duty of the county court clerk to furnish with the registration book, as in this act required, a sufficient number of printed certificates of registration to

meet the requirements of this act and for which he shall be paid a reasonable compensation out of the county levy of the county." It is insisted for appellee that the amendatory act is unconstitutional, because of the provision requiring the voter to produce to the election officers, when he presents himself to vote, a certificate of registration from the officers of registration, or in the event of its loss, a duplicate certificate of registration from the county clerk; and because of the further provision that he shall not be permitted to vote unless he produces such certificate, or duplicate certificate, to the election officers.    It being urged that these provisions constitute qualifications of the voter in addition to those contained in the Constitution; that they impose unreasonable regulations and burdens upon him, and tend to obstruct and destroy the right of suffrage.

We agree with counsel for appellee that the right of the Legislature to enact laws requiring registration existed before the adoption of the present Constitution, though the former Constitutions were silent on that subject; and that in passing upon a registration law enacted while the third Constitution was in force Judge Lewis, in Commonwealth v. McClelland, 83 Ky., 686, 7 R., 767, said: "It is only where such laws add to the qualifications prescribed by the Constitution, or impose unreasonable conditions to the exercise of the privilege of voting, that courts will interfere." An examination of the subjoined authorities, cited and relied upon by counsel for appellee, will show that, though expressed in different language, they do not enlarge the ground for interference upon the part of the courts with legislative action of this character beyond the rule announced by Judge Lewis in the case supra. McCreary on Elections, sec. 126; Cooley's Constitutional Limitations (7th Ed.), sec. 907; City of Owensboro v. Hickman, etc., 90 Ky., 629, 12 R., 576, 14 S. W., 688,

10 L. R. A., 224. That the State Constitution may prescribe what qualifications shall be possessed by those upon whom it proposes to confer the elective franchise, none will deny. And it is equally true that that instrument may empower the Legislature to prescribe the mode of its exercise, in which case the authority of the latter body to enact such laws as may be necessary to the proper exercise of the power thus conferred can not be questioned. "The judicial power of the government may so far regulate and control the legislative department as to set aside and declare void laws enacted by it, where such laws are in conflict wih the Constitution. But this is upon the theory, not that the judicial department is superior to the legislative, but that the Constitution is superior to both, and that it is the province of the former to construe both the Constitution and the statutes, and determine whether there is a conflict. If there is, it is the Constitution that controls and limits the Legislature, and not the courts." Works on Court and Jurisdiction, p. 191. It was said by Judge Cooley on this subject: "Nor can a court declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate natural, social, or political rights of the citizen, unless it can be shown that such injustice is prohibited, or such rights guarantied or protected, by the Constitution. Cooley's Const. Lim. (7th Ed.), p. 232: "If the courts are not at liberty to declare statutes void because of their apparent injustice or impolicy, neither can they do so because they appear to the mind of the judges to violate fundamental principles of republican government, unless it shall be found that these principles are placed beyond legislative encroachments by the Constitution." Cooley's Const. Lim. (7th Ed.), p. 237: "Nor are the courts at liberty to declare an act void because, in their opinion, it is opposed to

a spirit supposed to pervade the Constitution, but not expressed in words." Cooley's Const. Lim. (7th. Ed.), p. 239; Edmonds v. Banbury, 28 Iowa, 272, 4 Am. Rep., 177; State etc., v. Dillon, 32 Fla., 545, 14 South., 383, 22 L. R. A. 124. In Kinneen v. Wells, 144 Mass., 497, 11 N. E., 916, 59 Am. Rep., 105, it is said: "The qualifications of voters are fixed by State legislation. The requirements as to ownership, citizenship, sex, and residence, in connection with the right of voting, vary with the Constitutions or laws of the several States. However unwise, or unjust, or even tyrannical its regulations may be, or seem to be in this regard, the right of each State to define the qualifications of its voters is complete and perfect, except so far as it is controlled by the fifteenth article, amendments of the Constitution of the United States."

As before remarked, section 147 of the Constitution declares that "the mode of registration shall be prescribed by the General Aseembly." The power thus delegated is comprehensive. By it the General Assembly is not only authorized to fix the plan or method of registration, but also to provide every detail thereof. Of the many registration laws of the States it will, we doubt not, be found that hardly any two of them are alike. In some of the States the voter, in registering, is required to make oath as to his name, age, residence, etc. In others it is necessary to enter in the registration book a description of his person in addition to his name, age, and place of residence. We are told by counsel that in one State the voter is required to sign the registration book, and also the election book, so that his identity may be established by a comparison of signatures. In several of the States the law, as in this State, requires the registration officers to issue a certificate to the

voter when he registers, and this certificate he must preserve,
and present to the election officers on election day as a pre-
requisite to voting. "Registration," as applied to elections,
is defined by the Century Dictionary as follows: "In the
United States it is a system for the preventing of frauds
in the exercise of suffrage by requiring voters to cause their
name to be registered in books provided for the purpose in
each election district, with appropriate particulars of resi-
dence, age, etc., to enable investigation to be made, and the
right of the voter to cast the ballot to be challenged, if there
be occasion. In Great Britain and Ireland the word 'regis-
tration,' as used with reference to elections, means the making
up of a list of voters, which, after judicial revision is the
accredited record of the electors entitled to vote." The word
"registration," as the dictionary will show, has other mean-
ings than that given above. But, accepting the definition
here given, it does not follow that the issuing of a certifi-
cate by the registration officers to the voter when he regis-
ters is not a part of the plan of registration, for the certi-
ficate is intended to furnish the voter as well as the elec-
tion officers with evidence, in addition to that furnished by
the registration book, that he is a registered voter, and
therefore entitled to vote. The principal thing intended is
that the certificate shall furnish better means of identifying
the voter. His possession of the certificate, though conclu-
sive as to the fact that the person named therein has been
registered, will not be conclusive of his right to vote, for,
if unknown to the election officers, they may require other
proof of his identity. In other words, as argued by counsel,
the registration certificate does not mean "vote bearer" un-
less "bearer" be known to the election officers to be the per-
son named therein. It is equally true that the exercise of
due care upon the part of the election officers in requiring

identification of holders of registration certificates who are unknown to them would practically exclude from voting those who, through their loss by the owners, or other improper means, might get possession of them.   The act is not, in our opinion, open to the criticism that it will tend to disfranchise voters otherwise qualified.   The voter is put to no inconvenience in obtaining the registration certificate.   It is given him when he registers, and the provision which allows him in the event of its loss, to procure another of the county clerk by filing with that officer his affidavit proving such loss, relieves the voter of the disfranchisement that would otherwise necessarily result from its loss.   There will doubtless be bribing of voters under the registration statute as amended by the act in question, as there was under the former law; for while corrupt voters may, under the present law, be induced to sell their certificates of registration, and thereby deprive themselves of the right to vote, under the former law the same result was reached by hiring them not to register, or to remain away from the election after registering, by which they were also prevented from voting.   It is to be deplored that such evils should be associated with the elective franchise, but we must look to the General Assembly for relief against them in the form of more stringent laws for their suppression.

. It is also argued that the act imposes a burden upon the voter not contemplated by the Constitution, in that it compels him, in case of the loss of his certificate of registration, to incur expense to the amount of fifty cents in order to procure another of the county clerk.   It is to be taken for granted that the loss of registration certificates will rarely occur, except through the fault or neglect of the owners, for which reason it were better to put upon the party in fault the duty of paying the clerk the nominal fee for the dupli-

cate certificate than to compel that unoffending officer to
perform the services required of him without compensation.
Under the law the officers of registration or those of the
election may, if unacquainted with a person desiring to
register or vote, require proof of his identity; and would
doubtless be authorized, at the instance of such person, to
issue subpoenas for witnesses to be summoned to prove his
identity. If so, or such person should find it necessary to
hire a vehicle to convey to the place of registration or the
voting booth witnesses to prove his identity, would it be con-
tended that he would not be legally liable for the expense
of summoning or conveying his witnesses to the place of giv-
ing their testimony; and if, under these circumstances the
voter would be responsible for the expense incurred in prov-
ing his identity, would it be any greater hardship to require
him to pay the clerk's fee for the certificate allowed to be
issued by that officer?

It is further urged in criticism of the act that it is de-
fective, because it allows the county clerk to issue registra-
tion certificates in lieu of those lost by voters, without other
proof of such loss than their mere affidavits, and does not
in express terms provide for the preservation of such affi-
davits. The first of these objections overlooks the fact that
the registration books are on file in the county clerk's office
from the time they are completed and returned by the regis-
tration officers. And when an application is made to the
county clerk for a certificate in lieu of one claimed to be
lost an examination of the registration books by the clerk
would show whether or not the name of the applicant ap-
peared therein, and, if not, it would clearly be the duty of
the clerk to refuse him the certificate, notwithstanding his
affidavit therefor. The second objection seems to be equally
untenable. The requirement of the act is that affidavits

Yates (County Clerk) v. Collins.

showing the loss of registration certificates by the voters must be filed with the clerk. When filed, they become records in his office, and are to be preserved as such like other records that are required to be filed.

It is further urged that the act is defective in that it fails to provide penalties for violations of its provisions. It must be borne in mind that the act in question is intended to amend a statute in regard to registration, already in existence, which statute contains penalties that will apply to violations of the statute as amended. The fact that such penalties will not cover all offenses that may arise under the statute as amended does not make the amendatory act unconstitutional. The remedy lies in the enactment by the Legislature of a further amendment providing such additional penalties as may be needful.

Our attention has been called to the fact that the act fails to provide for the issual by the county clerk of original certificates of registration to persons who may be registered by him during the three days of supplemental registration provided for by sections 1498, 1499, Kentucky Statutes, 1903. This omission does not, in our opinion, affect the validity of the amendment. As the county clerk is the only officer authorized to register voters entitled to avail themselves of that right during the period fixed for supplemental registration, it will require no tortured construction of the statute as amended to say that he may issue to the voters admitted to registration by him certificates of registration, which shall as fully entitle them to vote at the election as if they had been issued by the officers intrusted with the duty of holding the first, or regular, registration.

We are not required to pass upon the policy of its enactment, but as to the constitutionality of the act we have no doubt. Wherefore the judgment of the lower court is re-

versed, and cause remanded, with directions to that court to sustain the demurrer to the petition, and for further proceedings consistent with this opinion.

Opinion by Judge O'Rear on rehearing:

In a petition for rehearing, another ground has been presented by appellee, upon which it is urged that the act discussed in the original opinion is void, as being violative to the Constitution. Section 147 is relied on. That section reads: "The General Assembly shall provide by law for the registration of all persons entitled to vote in cities and towns having a population of five thousand or more; and may provide by general law for the registration of other voters in the State." It is argued that the section divides all voters of the State into two classes, viz., those residing in cities and towns having a population of 5,000 or more into one, and all other voters into the other; that, as to the former, the Legislature was compelled to provide a system of registration, but, as to the latter, it was permitted to do so or not, but that if it did, then all must be required to be registered, or none could be. Before the present Constitution, registration in this State was not required at all by any general law. That instrument made it compulsory that all voters residing in cities and towns of 5,000 population, or greater, should be registered. Beyond that, the Legislature was left a free hand, except that it was compelled to provide for any additional registration by general laws only. It was not required that, if other registration was deemed expedient by the Legislature, all other voters should be registered. "Registration of other voters in the State" was allowed, but it was left to the General Assembly to classify them by general laws. It is in no sense class or special

legislation to classify voters resident in cities or towns separately from those resident in the country.

Petition overruled.