Case 55.—PROCEEDING ·BY J. F. RAINS AND OTHERS
AGAINST R. A. EARLY AND OTHERS, CONTESTING A
LOCAL OPTION ELECTION.—November 15.

## Early, &c. v. Rains, &c.

Appeal from Whitley Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for contestants, and R. A. Early and
others appeal.  Affirmed.

1. Intoxicating Liquors—Local Option—Town in Two Counties—
Ordering Election—Under Constitution, sec. 61, requiring the
Legislature to provide a means whereby the sense of the
people of a county, city, town, district, or precinct may be
taken on the question whether intoxicating liquors shall be
sold therein, and Ky. Stats. 1903, sec. 2554, providing that,
on petition of voters equal to 25 per cent. of the votes cast
at the last preceding general election in the territory pro-
posed to be affected, the county court shall order an elec-
tion in the territory specified in the petition on such ques-
tion, where petition is made for such an election in a town
lying in two counties, the county court of the county in
which the greater part of the town lies has jurisdiction to
order it.
2. Same—Failure to Order Special Registration—Under Constitu-
tion, sec. 6, requiring all elections to be free and equal; sec.
147, providing that, where registration is required, only persons
registered may vote; Ky. Stats. 1903, sec., 1486, as amended
by Act 1904, p. 31, chap. 6, requiring voters of all incorporated
cities and towns to register before being entitled to vote;
sec. 1490, providing that the general registration shall be
on the first Tuesday in October in each year; and sec.
1495, providing that, when an election is ordered to be held
in a county containing an incorporated city or town at any
other time than the regular November election, the officer
ordering it shall fix a day for registration of the persons
entitled to vote at such election—a local option election held
in an incorporated town in April, without any special regis-

tration being provided for, is void, and may not be sustained by showing that the result was not affected by omission of such registration.

TYE & DENHAM for appellants.

J. D. PERKINS, J. H. WILSON and C. W. METCALF of counsel.

Our contention is:

1. That the board of contest was never duly organized, and had no right to hear and determine this contest.

2. A county contest board has not the power or authority delegated to it to do that which is sought in this contest, and same should be dismissed.

3. Sec. 1495 of the Ky. Stats., applies only where an election or vote is ordered to be held or taken in an entire county which contains a city or town of any class.

4. As no complaint is made of a failure on the part of the city council of the city of Corbin to provide for a special registration for the election in question, and as no such failure appears from the record, then the contention of the appellees, on account of the failure of the county judge to provide such special registration, can not avail.

5. The claim of the appellees for special registration is without merit for the reason that the allegations of the grounds of contest do not show but what each of the individuals, whose names appear therein, was entitled to register at the regular registration on the 1st Tuesday in October, 1904, and could thereafter have caused his name to be placed on the registry by applying to the office of the Whitley County Court and making the proper affidavit.

6. The evidence fails to show that any party whose name is mentioned in said grounds of contest ever was a legal voter in the city of Corbin, or entitled to register at any election therein, because the qualifications of an elector are set forth in said grounds and put in issue by the appellants.

7. The appellees can not question the failure of any officer to do an act either mandatory or directory, unless they are affected thereby.

JOHN S. WILSON for appellees.

We submit:

1. That in all elections the free and fair expression of the sovereign power of the people must be legally provided for. If registration is a necessary prerequisite to voting, then an opportunity to register must be afforded.

2. That the elective franchises granted by the Constitution can not be abridged, or prevented by any authority, or any act, or failure to act, on the part of any county court.

3. That registration as a condition precedent to the right to vote is mandatory; that registration as a condition precedent to holding a special election is mandatory, and that any election without regard to such registration is illegal, null and void.

4. No election is valid without legal authority behind it, and there was no legal authority behind the election in question, because there was no provision for special registration made by the power calling the election, as provided for by the Legislature.

### CITATIONS.

Cyc. of Law and Prac., vol. 15, pp. 279, 281, 287-88, 302b, 3161, 316-17, 317-II.

### AUTHORITIES CITED.

Constitution of Ky., secs. 6 and 145; Cooley's Constitution of Limitation, 7 Ed., 907; City of Owensboro v. Hickman, 90 Ky., 629; Hocker v. Pendleton, &c., 100 Ky., 726; Wilson v. Hines, 35 S. W., 627; Cress v. Commonwealth, 37 S. W., 493; Puckett v. Snider, 61 S. W., 277; Ky. Stats., secs. 1495 and 1490; Major v. Barker, 99 Ky., 699; Tunks v. Vincent, 51 S. W., 622.

OPINION BY JUDGE O'REAR—Affirming.

Corbin is a town of the fifth class in this State. It is situated partly in Whitley county and partly in Knox, but the greater part is in Whitley. More than 25 per cent. of the legal voters of the town petitioned the county court of Whitley county to order a special election to take the sense of the voters of the town whether spirituous, vinous, or malt liquors should be sold or bartered therein. The election was ordered and held. The result certified was that the majority had voted in favor of the proposed prohibition. Appellees contested the election. The judgment of the contest board, and on appeal that of the circuit court, was in favor of the contestants, and the election was declared void.

The first question examined is the jurisdiction of

the Whitley County Court to order an election in territory of another county. The subject of licensing and traffic in intoxicating liquors was of large enough importance to have engaged the particular attention of the constitutional convention, as well as of the Legislature. Constitution, sec. 61, requires that ''the General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereof regulated.'' By this provision a varying unit of territory wherein the question may be decided for themselves by the people is provided. This unit may be the whole county, it may be the whole of a city or town or it may be a single precinct. The Legislature, in compliance with the mandate of the Constitution, enacted sec. 2554, Ky. Stats. 1903. By that section, upon a petition signed by a number of legal voters equal to 25 per cent. of the votes cast in the territory proposed to be affected at the last preceding general election, it is made the duty of the county court to order an election within the territory specified in the petition. The citizens who are legal voters in the territory alone can take the initiative in the matter, and they determine the extent of territory or unit to be affected by the proposition; that is, whether it shall be a whole county, a whole city or town, or merely one or more precincts of the county or city. This follows the requirement of the Constitution, which gives the right to a city or town as a whole to allow or prohibit the liquor traffic within its limits. In view of the language of sec. 61 of the Constitution, it is not permitted to the Legislature to deny a town or city the right to vote on this subject as a whole. Nor has the Legislature attempted to deny or abridge the

right.  We are speaking of the condition where the town petitions for an election, no precinct having previously taken other action in the matter.

It will be noticed that there is no express reference in the statute, nor is there in any statute, to the condition where a city or town is situated partly in two or more counties. It was not, of course, within the purpose of either the covention or the Legislature not to provide also for cities and towns situated in two or more counties.  Nothing in the language used nor in the nature of the subject justifies such an inference. On the contrary, the scope of the terms employed is comprehensive enough to, and necessarily does, include all cities and towns of the Commonwealth. The function of the county court in ordering the election is merely to determine whether the requisite number of legal voters in the territory to be voted in has petitioned that the election be ordered, and, if they have, to order the election to be held as required by the statutes.   It proclaims that the proper initiative has been taken, whereupon the privileges of the Constitution and statute and the duties imposed on election officers thereby are brought in action.   The county court has no discretion in the matter.   Its duties in this respect are of a ministerial nature.   Unless it is true that the county court of the county where the greater part of a town or city may be situated can perform the function of passing on the petition and of directing the proper officers to conduct the election, then it would follow that the positive requirement of the Constitution allowing a city or town to vote on this question has been ignored. . The true rule for construing statutes is to hold, where the language permits, that they intend to execute, rather than to evade constitutional requirements.   We therefore read the provision of sec. 2554, Ky. Stats. 1903, viz: "It shall

be the duty of the county court in such county," to mean the county wherein the town or city, or the greater part thereof, may be situated. Where a town or city is the unit, for the purposes of local self-government, and particularly upon the subject of licensing or prohibiting the liquor traffic, it is supreme and entire within its jurisdiction. It is so recognized by the Constitution and the statutes. Whether it is in one county or another, or partly in two or more, is immaterial. For it is not the county, but the town, that is deemed the government in such matters. Votes affecting the rights and interests of the town as a municipality are taken, and its obligations are treated, entirely without regard to the county organization or government. Express provision is made by statute for holding elections in such towns. (Sec. 1445, Ky. Stats. 1903.)

The elections treated of in the last-named section of the statute are not only the selection of municipal officers, but the submission of any question or proposition to be voted on by the municipality as such. The manner of certifying and canvassing the returns of the election is explicit, and covers literally and in spirit the very condition and kind of election involved in this appeal. It was the duty of the county court of Whitley county to order the election for the whole town of Corbin, 25 per cent. of the legal voters of that town, based upon the last preceding general election, having petitioned for it, whether or not the petitioners lived in one or more precincts, or in one or more counties. It is enough, if they are citizens and legal voters of the town. (Smith v. Patton, 103 Ky., 444, 20 Ky. Law Rep., 165, 45 S. W., 459; Nall v. Tinsley, 107 Ky., 441, 21 Ky. Law Rep., 1167, 54 S. W., 187.) The result of such election, if in favor of

prohibition should be certified to both counties in which the town is situated.

The next question examined is whether there was provided to the citizens of the town an opportunity to comply with the election laws requiring registration. By an amendment to the statute (chap. 6, p. 31, Acts 1904, approved February 11, 1904) voters of all the cities and towns of this Commonwealth are required to register before being entitled to vote. By sec. 1490, Ky. Stats. 1903, the first Tuesday in October in each year is made a registration day. Other days during the month may be set apart by ordinance of the town council for registration. The voter is required to personally appear on a regular registration day before the officers of registration, and, upon being by them found to be a legal voter, is so registered. The section further provides: "Said registration in October shall be known as the general registration, and any person then registered may vote at all elections until the next general registration, unless he become disqualified after registering. Every person shall be entitled to be registered who would be entitled to vote at the next succeeding November election, as now provided by law."

By the Constitution of this State (sec. 145) every male citizen of the United States, of the age of 21 years, who has resided in this State one year, and in the county six months, and in the precinct in which he offers to vote sixty days, next preceding the election, is declared to be a voter. Certain disqualifications are prescribed by the section not necessary to be noticed here. By sec. 147 of the Constitution the General Assembly is required to pass laws for registration of voters for certain of the cities and towns of the State, and is empowered to pass similar general laws applying to other voters of the State. In the

section just cited it is provided: "Where registration is required, only persons registered shall have the right to vote." Before the adoption of the present Constitution it had never been required by constitutional provision that the fact of being registered as a legal voter was one of the legal qualifications of a voter in this State. But under the Constitution of 1850 it was nevertheless held that the Legislature might legally enact registration statutes that did not add to the qualifications exacted by the Constitution, and that such statutes would be upheld as not unreasonable methods of ascertaining who were legal voters, the registration being adopted as evidence of the fact, and not as a qualification. (Commonwealth v. McClelland, 83 Ky., 686, 7 Ky. Law Rep., 767.) Thus we see that in this State it is now required that all voters residing in cities and towns from the first to the sixth class are required, as one of the qualifications of an elector, to be registered as a voter therein; that while this is required as a qualification, the system of registration is left to be formulated by the Legislature. But at the very threshold of this legislation, and as the cardinal principle upon which it must be built, is the declaration contained in the Bill of Rights (sec. 6, Constitution) that "all elections shall be free and equal."

The election being contested in the case at bar was held April 4, 1905. The last registration of voters in the town was October, 1904, previous to the general November election, 1904. There was no special registration held for the town of Corbin after the November election, 1904, and previous to the April 4, 1905. For appellants it is contended that there was no provision of the statute for having a special registration in the town where the election was held in the town alone, and that therefore the last previous general

registration was necessarily in fact, and indeed by its terms, which have been quoted above, the one to apply.

It was said by Judge Lewis, in Commonwealth v. McClelland, supra: "Elections are free and equal only when all who possess the requisite qualifications are afforded a reasonable opportunity to vote without being molested or intimidated, and when the polls are in each county and in each precinct alike freed from the interference of contamination of fraudulent voters."

Obviously, then, if there is no provision at all for allowing registration for an election to be held in April, 1905, except the registration had for the election of November, 1904, when only those then entitled to vote could be legally registered, those who moved to the town more than 60 days before April 4, 1905, from elsewhere in the county after November, 1904, or who had resided in the town not quite long enough to be voters in November, 1904, but amply sufficient to be entitled in April, 1905, and men living in the town who were not 21 years old in November, 1904, but were April 4, 1905, and who possessed the other constitutional qualifications, would all be denied the right to vote at the April election, 1905. This would not be because any of these citizens had done anything to forfeit his right to vote, or had failed to do anything that he could do to preserve it, but because the Legislature had failed to provide for their complying with the requirement of the law that they should register as a condition to the right of suffrage.

If the other view be taken of it, and the last previous general registration be deemed the one intended to apply, then it would be that the Legislature has provided an additional qualification to that prescribed by the Constitution. It would require one, to be a

legal voter in Corbin in April, 1905, to have been 21 years of age in November, 1904, and to have in November, 1904, resided in this State more than one year, and in the county six months, and the precinct sixty days, which in April, 1905, would have had the effect of requiring five months more of age and residence to be a legal voter than the Constitution itself demanded. It will not do to say that the Legislature has not in fact expressly required anything of the kind. It is as true that it has, if the inevitable effect is to require it, as if it had done so in express terms. The Constitution left it to the Legislature to provide a system of registration that would not conflict with the Constitution itself, but would tend to carry out its purpose. The system so adopted can neither extend nor curtail the constitutional qualifications. It is merely to ascertain who possess those qualifications, so as to expedite the conduct of the election and to insure its being free and equal. It is a system for regulating a right, not for creating, enlarging, or changing any right already guarantied by the Constitution.

It was said in City of Owensboro v. Hickman, 90 Ky., 634, 12 Ky. Law Rep., 576, 14 S. W., 688, 10 L. R. A., 224: "A registration law, however, will not be held valid which, under the color of regulating the manner of voting, really subverts the right. If, for instance, it prescribes a qualification for the elector in addition to those prescribed by the Constitution, it will be declared invalid. In, the language of one writer, to be upheld, 'it must be regulation purely, not destruction.'"

This language was used in condemning a registration statute which made a registration in July of one year apply conclusively to all elections to be held thereafter in that year. The statute was held bad, because in conflict with the Bill of Rights in the Con-

stitution. Judge Cooley says: "All regulations of the election franchise, however, must be reasonable, uniform, and impartial. They must not have for their purpose, directly or indirectly, to deny or abridge the constitutional right of citizens to vote, or necessarily to impede its exercise. If they do, they must be declared void." (Cooley, Con. Lim., 602.)

We have said this much in order to clearly get at the principle under which another statute of this State is to be construed. Sec. 1495, Ky. Stats., 1903, reads: "When an election or vote is ordered to be held or taken in any county containing any city or town belonging to either of said classes, at any other time than the regular November election, then the county judge, or other officer so ordering said election or vote, shall, at the same time, fix a day for the registration of those persons entitled to vote thereat whose names have not been recorded on the registration books of that year, and shall require the same to be published in like manner as the time and place of said election or vote are required to be published. Registrations under this section shall be known as 'special registrations,' and any person so registered shall be entitled to vote at all elections held prior to the next general registration. Registrations prior to special elections shall be held not less than five days prior to the election."

The county judge, in ordering the election which is the subject of this contest, did not comply with sec. 1495, supra. Appellants contend that the section does not apply to the situation in hand, because the expression is, "when an election or vote is ordered to be held or taken in a county containing any city, town," etc. The argument is that the section applies only when an election is held for the whole county.

vol. 121—29

There is no apparent reason why the section should be so limited. Besides, as we have seen, not to have provided for a special registration, where there is a special election, works to disqualify or to deny the suffrage to legally qualified voters and violates sec. 6 of the Bill of Rights. We have no hesitation, in view of the foregoing, in holding that the purpose of sec. 1495 was to provide for special registration in every instance where registration was required, and applies to every special election held in cities or towns of this Commonwealth, whether such city or town, or any part thereof, is voting alone or in connection with other territory. Some 40 voters were not registered before the April, 1905, election in Corbin. Many of them were legal voters, who had not opportunity to register previous to November, 1904. But we do not think it material what was the reason of their failure to register then. The only question necessary to be decided by the officers of registration for the special registration was, were the voters legally qualified and entitled to vote at the special election? If so, they should have been registered.

Appellants say that as there is nothing in the record to show what the majority was in favor of prohibition at the April, 1905, election, and that, even if those who were denied the right to vote had voted, and had all voted against the proposition, still, as there is not a showing that the result would have been different, the irregularity is harmless, and ought not to be allowed to overthrow the result. The same argument extended would justify dispensing with an election altogether; for, if those opposed to the proposition were unable to produce evidence enough to show that it would have failed to carry, the argument is, in effect, that thereby it is shown that the voters' will was in favor of it, and should be upheld, ac-

cordingly. The Constitution and statutes provide for an election—not a trial in court—to settle this question. The election must be by secret ballot, not by forcing the electors to disclose how they voted, nor how they intended to vote. The election, if legally called for, must be held. Our concern is not primarily what the result was or might have been, but whether an election was held at all. That a majority of the legal voters were given an opportunity to register and vote is obviously not a free and fair election. All legal voters should have the privilege and right. Where it is denied to any substantial extent, it is an invasion of the highest right of the citizens, and tends to substitute other means of determining the popular will, for elections held by the people. Such course, however innocent its motive, can not be too severely discountenanced. The courts can not after an election hold a registration to see whether all entitled to vote had an opportunity to do so, nor to ascertain what might have been the result if those entitled, but denied, had voted. It must be apparent at once that, where the right to vote depends upon whether the voter in person on a given day presented himself to the officers of election for registration, it would be impossible for the court to determine, as well as dangerous to allow it, that the voter would have gone in person to the polling place, and, if he had, would have voted so and so. Unless judgments of courts and boards are to be substituted for elections, the trial of a question like this is confined to determining whether there has been a substantial compliance with the law in the conduct of the election, and, if there has not been, to remand the question to the people concerned, where their will may be fairly and legally recorded.

The failure of the county court to provide for a spe-

cial registration invalidated the election held April 4, 1905. The judgment of the circuit court so holding is consequently affirmed.