CHARLES K. LANDIS v. JOHN P. ASHWORTH, COLLECTOR, AND TRUSTEES OF SCHOOL DISTRICT NO. 44, IN CUMBERLAND COUNTY.

MATILDA T. LANDIS v. THE SAME.

1. Under the statutes of this state, school districts are political organizations possessing the power of taxation.
2. Whether or not the action of the county school superintendent in defining the territorial boundaries of a school district will of itself, under our laws, constitute the district and its inhabitants a political organization, if the inhabitants of the district so defined assent to such organization and assume the functions thereto appertaining, the corporate entity becomes complete.

3. The school laws are not rendered special or local, or otherwise unconstitutional, by the fact that under them a higher grade of education may be afforded to the children in one district than that offered to those in another.

4. By virtue of the act of April 8th, 1887 (*Pamph. L.*, p. 149), women may vote at school meetings for all purposes except the election of officers.

On *certiorari*.

Argued at November Term, 1894, before Justices Dixon, Magie and Lippincott.

For the prosecutors, *Charles K. Landis, Jr.*

For the defendants, *Royal P. Tuller.*

The opinion of the court was delivered by

Dixon, J. This *certiorari* brings up for review a tax levied in 1893 against the prosecutor for school purposes in School District No. 44, of Cumberland county.

The tax is assailed upon the ground that a school district is not a political division of the state possessing powers of local government, and therefore, under the decision in *Baldwin* v. *Fuller*, 10 *Vroom* 576; *S. C.*, 11 *Id.* 615, taxes for public purposes cannot be levied exclusively upon the persons and property within it.

This contention seems to us not well founded. School districts are formed for the purpose of aiding in the exercise of that governmental function which relates to the education of children, and to that end the legal voters of each district are entrusted with specified powers of local government, and the trustees whom they elect are made a body corporate to represent the district and its inhabitants. These characteristics mark them as political organizations. *Lydecker* v. *Englewood*, 12 *Vroom* 154. They were so regarded in *State* v. *Deshler*, 1 *Dutcher* 177, where Mr. Justice Elmer said: "School districts are only smaller municipalities, and their officers are public officers."

It is also urged that District No. 44 has no legal existence, because its boundaries were defined, not by the legislature itself, but by the school superintendent of Cumberland county.

There is in our constitution no express prohibition against the delegation by the legislature of its power to form political organizations in the state, except that which forbids the exercise of legislative power by any person belonging to or constituting the executive or judicial department of the government. We need not now consider whether such a prohibition is to any extent implied, for it seems clear that the legislature may permit the inhabitants of a defined territory to accept or reject such an organization for themselves (*Paterson* v. *Society U. M.*, 4 *Zab.* 385), and that by such acceptance, under legislative sanction, the corporate entity becomes complete. The evidence shows that School District No. 44 was defined in the year 1872, in accordance with the statute then in force, and from that time to the present the inhabitants of the district, and the trustees and officers selected by them, have constantly exercised the powers granted by law to such bodies. Moreover, in numerous statutes passed since that time, the legislature has recognized the corporate character of school districts formed in the same way, and thus, by ratification, has established what it might originally have ordained. Under these circumstances, the legality of the district's incorporation is now beyond question.

The statutes upon which the tax under review depends are likewise impugned as being opposed to the constitutional amendments adopted in 1875, which enjoined upon the legislature the duty of providing for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the state between the ages of five and eighteen years, and forbade the passing of private, special and local laws providing for the management and support of free public schools. The prosecutor insists that the laws delegating to each school district the power of determining for itself what amount beyond the state appropriation shall be raised by tax therein for the support of

public schools in the district, and the power of building school-houses and employing teachers, result in affording different degrees of instruction to the children in different districts, while it is the duty of the legislature to see that the same facilities for education are furnished to every child in the state. Hence, it is argued, the laws are special and local.

That the generality of a statute is not to be tested by the uniformity of the results flowing from the exercise of the powers which it confers, provided the same powers are bestowed upon all political bodies of the same class, was distinctly decided in *In re Petition of Cleveland*, 23 *Vroom* 188. The school laws under which this tax was levied come within the range of this decision.

Nor can I think that the constitution requires the legislature to provide the same means of instruction for every child in the state. A scheme to accomplish that result would compel either the abandonment of all public schools designed for the higher education of youth or the establishment of such schools in every section of the state within reach of daily attendance by all the children there residing. Neither of these consequences was contemplated by the amendment of 1875. Its purpose was to impose on the legislature a duty of providing for a thorough and efficient system of free schools, capable of affording to every child such instruction as is necessary to fit it for the ordinary duties of citizenship; and such provision our school laws would make, if properly executed, with the view of securing the common rights of all before tendering peculiar advantages to any. But, beyond this constitutional obligation, there still exists the power of the legislature to provide, either directly or indirectly, in its discretion, for the further instruction of youth in such branches of learning as, though not essential, are yet conducive to the public service. On this power, I think, rest the laws under which special opportunities for education at public expense are enjoyed.

Lastly, the tax is said to be illegal because women voted at the school meeting by which its amount was determined.

The statute of April 8th, 1887 (*Pamph. L.*, *p.* 149), expressly gives to women the right to vote at any school meeting in any district wherein they may reside, provided they be citizens of the United States, of the age of twenty-one years, and have resided in the state one year and in the county five months.

Because of the clause in our constitution which limits to male citizens the right of voting for officers, this statute cannot have effect to the full purport of its terms, but I see no good reason for denying to it whatever force is consistent with the constitutional provision. We should assume that the legislature had the constitution in mind when it passed the act, and intended only such an enactment as it was competent to make. We think women can lawfully vote at school meetings for all purposes except the election of officers.

The tax is affirmed, with costs.