HARRIET F. CARPENTER, PLAINTIFF IN ERROR, v. CHARLES A. CORNISH ET AL., DEFENDANTS IN ERROR.

Submitted July 1, 1912—Decided November 18, 1912.

1.  The courts do not undertake to determine so fundamental a political question as the existence of the government they serve. *Luther* v. *Borden,* 7 *How.* 1, followed ; *Bott* v. *Secretary of State,* 34 *Vroom* 289, distinguished.

2.  The several states have the power to change the qualifications for electors of representatives in congress by changing the qualification for electors of the most numerous branch of the state legislature.

3.  Article 4, sections 2 and 3, of the state constitution provides that senators and members of assembly shall be elected by the legal voters; legal voters are the male citizens who by article 2 are given a vote for officers elected by the people.

4.  The right to vote is not a natural inherent right, but is the creation of constitutions and statutes. *Ransom* v. *Black,* 25 *Vroom* 446, followed.

5. Women under our existing law are not entitled to vote for officers, delegates, presidential electors or upon questions referred to the people.

On error to the Supreme Court, whose opinion is reported *ante p.* 254.

For the plaintiff in error, *Mary Philbrook.*

The opinion of the court was delivered by

SWAYZE, J. The Supreme Court held that the main contention of the plaintiff in error was untenable because women had not been authorized to vote under the constitution of 1776. Without expressing our opinion upon this point, we prefer to decide the case by a somewhat different line of reasoning. It must be conceded that the constitution of 1844 limited the right to vote for officers elective by the people to male citizens of the United States. The contention is that this limitation must be disregarded because the constitution of 1844 was improperly adopted, for the reason that only male citizens were allowed to vote thereon. This contention has the distinction of being as courageous as it is novel. This court exists only under the constitution of 1844, and if that constitution is not the law of the state, we, and our predecessors, for nearly seventy years have been usurping powers that do not belong to us. The very writ of error issued by the plaintiff out of this court would, if her contention is correct, be entirely nugatory since her right of appeal from the decision of the Supreme Court would be to the governor and council under the constitution of 1776; and inasmuch as no council has been in existence since 1844, the plaintiff in error would be unable to correct any error that the Supreme Court might have made. Her difficulties indeed would be even greater, for upon her contention no member of the Supreme Court for the last sixty-eight years has been properly appointed, and the best that could be said for that tribunal would be that it had a *de facto* existence. If she is right now, we have been without legally constituted judicial tribunals. Results so startling suggest that the argument is defective.

Counsel for the plaintiff seems to have realized the difficulty, for at the very close of her brief she suggests that it is only the suffrage clause that is under attack, and she adds: "We cannot say the constitution was not adopted by the majority of the people, we presume that it was; but emphasis is laid upon the fact that the suffrage clause is the only part of the constitution which deprives people of former constitutional rights." The obvious answer to this suggestion is that if the constitution of 1844 was adopted by a majority of the people, as the counsel presumes it was, the suffrage clause was adopted by the same vote, and if the majority of the people chose to deprive people of their former constitutional rights we cannot alter the situation. Every change in the constitution of 1776 deprived someone of some previously existing right. The constitution of 1844 has been assumed to be the organic law since its adoption, and no question has heretofore been raised as to its validity. The courts do not undertake to determine so fundamental a political question as the existence of the government they serve. Each member of this court has more than once taken an oath of allegiance to the government established in this state under the authority of the people. The only state government any of us has known is that established by the constitution of 1844, and it would be the height of absurdity for us now to declare that the government to which we have sworn allegiance has no legal existence. As was said by the Supreme Court of the United States in *Luther* v. *Borden*, *7 How.* 1 (at *p.* 40) : "Judicial power presupposes an established government capable of enacting laws and enforcing their execution, and of appointing judges to expound and administer them. The acceptance of the judicial office is a recognition of the authority of the government from which it is derived. And if the authority of that government is annulled and overthrown, the powers of its courts and other officers are annulled with it. And if a state court should enter upon the inquiry proposed in this case, and should come to the conclusion that the government under which it acted had been put aside and displaced by an opposing government, it would cease to be a court, and be incapable of pronouncing a judicial

decision upon the question it undertook to try. If it decides at all as a court, it necessarily affirms the existence of authority of the government under which it is exercising judicial power." It is true that in *Bott* v. *Secretary of State,* 34 *Vroom* 289, we passed upon the question whether the lottery amendment of 1897 had been legally adopted, but Mr. Justice Dixon called attention to the difference between a court's investigation into the legality of the government of which the court is a branch, and its investigation into the legality of the procedure which in no way involves the legality of the government itself. That difference, he said, was too plain to require elucidation. The Supreme Court of the United States has in two recent cases refused to consider similar questions upon the ground that they were political and not judicial in their character. *Taylor* v. *Beckham,* 178 *U. S.* 548, which involved the governorship of Kentucky. *Pacific Telephone Co.* v. *Oregon,* 223 *Id.* 118, which involved the validity of the initiative and referendum in the constitution of Oregon.

The plaintiff in error, however, claims that even if our view is correct, she is entitled to vote for members of congress, since that is a right secured to her by the constitution of the United States. It is, we think, settled by the decision in *Ex parte Yarbrough,* 110 *U. S.* 651, that the federal congress may legislate for the protection of the right to vote for members of congress. This decision, however, did not overrule the earlier case of *Minor* v. *Happersett,* 21 *Wall.* 162. In that case, upon application of a woman for the right to vote, the court held that the constitution of the United States does not confer the right of suffrage upon anyone. This is explained in *ex parte* Yarbrough as meaning that the right was not definitely conferred on any person by the federal constitution alone, because, under the terms of that constitution itself, it was necessary to look to the law of the state to ascertain the qualifications for voters, under the clause of the federal constitution which prescribes as the qualification for electors of the house of representatives that they shall have the qualifications requisite for electors of the most numerous branch of the state legislature. The point now made is that those qualifications were fixed in

1787, when the federal constitution was adopted, and are not subject to change by subsequent action of the states. It is argued that the constitution constituted a contract with the electors which it was beyond the power of the state to impair after the federal constitution had been adopted. The argument proves too much, for if the state could not deprive a class of voters of the suffrage, it could not deprive them of the influence which that suffrage gave them by admitting others to the right on less onerous terms, and the property qualification prescribed by the constitution of 1776 could never have been altered. The fact that the right of suffrage has been constantly extended without objection not only in New Jersey, but in the other thirteen original colonies, shows the fanciful character of this argument. The contemporaneous construction has been persistently adverse to this contention of the plaintiff in error. The consequences, if that contention should prevail, would be serious. From the beginning of the government, there has been a constant tendency to consolidate state and national elections, to hold them upon the same day, and to vote for national and state officers upon the same ballot. This would be impossible if the qualifications for electors of members of congress · must necessarily remain as they were originally, while the qualifications for electors of the most numerous branch of the state legislature are subject to change by the several states. This objection would be as forcible in the thirty-five states that have been admitted since the federal constitution was adopted as in the original thirteen states. We need not, however, resort to the argument from contemporaneous construction and the argument from the consequences of the opposite construction. The language of the federal constitution itself as now amended demonstrates that the several states have the power to change the qualifications of electors for representatives in congress. Section 2 of the fourteenth amendment provides that when the right to vote at any election for the choice of electors for president and vice · president of the United States, representatives in congress, the executive and judicial officers of a state or the members of the legislature thereof, is denied to any of the male in-

habitants of such state being twenty-one years of age and citizens of the United States or in any way abridged except for participation in rebellion or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such state. It is impossible to avoid two inferences from this language—one, that the federal constitution contemplates that the right of suffrage for presidential electors and representatives in congress shall be limited to males; second, that the states may, if they choose, abridge this right of suffrage and be subject to no other penalty than the loss of representation. It is almost equally difficult to avoid the inference that the federal constitution contemplates that the qualification of electors for presidential electors and representatives in congress shall be the same as the qualifications of electors for executive and judicial officers of the state or members of the legislature. A similar result must be reached if we examine the fifteenth amendment. That provides that the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color or previous condition of servitude. The necessary implication is that the right to vote may be denied or abridged for other reasons than race, color or previous condition of servitude, and so the courts have in effect held. In *United States* v. *Reese,* 92 *U. S.* 214, it was held that the act intended to protect the right of suffrage in the negro race was beyond the power of congress because not confined in its operation to unlawful discrimination on account of race, color or previous condition of servitude, but broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, and it could not be limited by judicial construction so as to operate only on that which congress might rightfully prohibit and punish. The court said:

"The fifteenth amendment does not confer the right of suffrage upon anyone. It prevents the states, or the United States, however, from giving preference, in this particular, to one citizen of the United States over another on account of

race, color or previous condition of servitude. Before its adoption this could be done. It was as much within the power of a state to exclude citizens of the United States from voting on account of race, &c., as it was on account of age, property or education. Now it is not. If citizens of one race having certain qualifications are permitted by law to vote, those of another having the same qualifications must be. Previous to this amendment, there was no constitutional guaranty against this discrimination; now there is. It follows that the amendment has invested the citizens of the United States with a new constitutional right which is within the protecting power of congress. That right is exemption from discrimination in the exercise of the elective franchise on account of race, color or previous condition of servitude. This, under the express provisions of the second section of the amendment, congress may enforce by appropriate legislation."

It may be that the people ought to insert the word "sex" in the fifteenth amendment along with "race, color or previous condition of servitude," but until they do so, the right to vote for representatives in congress or for presidential electors stands on no firmer base than the right to vote for members of the state legislature under the state constitution. These views are sustained by the cases of *Stone* v. *Smith,* 159 *Mass.* 413; *Gougar* v. *Timberlake,* 148 *Ind.* 38; *Van Valkenburg* v. *Brown,* 43 *Cal.* 43; *Pope* v. *Williams,* 193 *U. S.* 621.

The plaintiff in error argues that even if the constitution of 1844 is adopted as our guide, that constitution does not fix the qualification of voters for members of the senate and assembly, municipal officers, questions referred to the people, presidential electors, primary elections and election of delegates to national and state conventions. It is said that in the absence of any qualifications fixed by the constitution the right to vote at such election belongs to the people—women as well as men. With respect to members of the senate and assembly the argument is that they are not officers, and that article 2 of the state constitution as to the right of suffrage relates only to votes for officers that may be elected by the

people. Section 2 and section 3 of article 4 provide that the senate and assembly shall be composed of senators and members elected by the legal voters of the counties. Unless the qualifications of legal voters are prescribed by article 2 there is no constitutional definition of their qualifications, and it is open to the legislature to confer or withhold the right. The legislature has tacitly, if not expressly, adopted the qualifications of article 2 of the constitution, except so far as it has permitted women to vote at school meetings, which right by construction is limited so as to avoid conflict with the provision limiting to male citizens the right of voting for officers. *Landis* v. *School District No. 44,* 28 *Vroom* 509; *Chamberlain* v. *Cranbury, Id.* 605. The objection made by the plaintiff in error is that there is a natural and inherent right in all of the people, male and female, to vote. If this were so, the limitation of the right to those over twenty-one years of age would be without justification. It is, however, well settled that the right to vote is not a natural inherent right, but is the creation of constitutions and statutes. *Ransom* v. *Black,* 25 *Id.* 446, 448, 449. The opinion is that of a majority of the Supreme Court, but was approved by Mr. Justice Dixon (*Id.* 459), and we affirmed on his opinion, 36 *Id.* 688. It is supported by cases in other jurisdictions. *Minor* v. *Happersett,* 21 *Wall.* 162; *United States* v. *Reese,* 92 *U. S.* 214; *United States* v. *Cruikshank, Id.* 542; *Pope* v. *Williams,* 193 *Id.* 621; *Stone* v. *Smith,* 159 *Mass.* 413; *Gougar* v. *Timberlake,* 148 *Ind.* 38; *Van Valkenburg* v. *Brown,* 43 *Cal.* 43. As was said in Gougar *v.* Timberlake, if women have a natural inherent right to vote, they are not subject to the limitations as to age, residence and naturalization. Those limitations are imposed on males only. This disposes also of the contention that women have the right to vote for municipal offices, upon questions referred to the people, and at primary elections and election of delegates. They have no such right unless they can show a statute or constitutional provision giving it to them. There is no such statute, and the implication, if not the express language of the constitution, is adverse to the right claimed; the contention of the plaint-

iff in error fails. We have only to add that as to the right claimed to vote for presidential electors the matter is wholly within the control of the state. *McPherson* v. *Blacker*, 146 *U. S.* 1 (the Michigan Electors case).

The judgment of the Supreme Court is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ.   12.

*For reversal*—None.