## Morgan v. Revis.

(Decided June 4, 1926.)

## Appeal from Leslie Circuit Court.

1. Elections—Candidate, Not Filing Certificate of Nomination Within 45 Days of General Election, had no Right to have Name Printed on Ballot, and Votes Cast for Him could Not be Counted.—Candidate, not filing certificate of nomination within 45 days of general election, had no right to have his name printed on ballot, and no vote cast for him can be properly counted.

2. Elections.—Name of candidate whose nominating petition was signed by less than 100 legal voters of county was improperly placed on ballots, and no votes cast for her should have been counted.

3. Officers—If Neither Candidate Received Any Legal Votes Because of Failure to File Certificate of Nomination in Time, and Nominating Petition was Signed by Less Than 100 Voters, Neither is Elected, and there is Vacancy to be Filled According to Law.— If neither contestant nor contestee received any legal votes because of failure to file certificate of nomination in time, and nominating petition was signed by less than 100 legal voters of county, respectively, neither was elected, and there is vacancy to be filled according to law.

4. Elections—Women's Names Signed by Husbands in Their Absence and of Man Signed by His Wife During His Absence Must be Eliminated from Nominating Petition.—Names of women signed by their husbands during their absence and of man signed by his wife during his absence must be eliminated from nominating petition in estimating whether it was signed by 100 legal voters.

5. Elections—Name of One Alleged to be Under 21, and Testifying that he did Not Know How Old he was, but Considered Himself Only 20 at Time of Signing Contestee's Nominating Petition, Must be Stricken, in Absence of Contradictory Testimony.—In absence of testimony contradicting allegation of contested petition, that one signing contestee's nominating petition was not 21 years old, and his testimony that he did not know how old he was but considered himself to be only 20, his estimate must be accepted, and his name stricken from petition.

6. Elections—One Cannot Validate Signature of His Name to Nominating Petition by Another in His Absence, by Subsequently Telling Signer that he Approved (Ky. Stats., Section 1453).—Ky. Stats.,

section 1453, contemplates signature of nominating petition by signer personally or by another in his presence, and he cannot validate another's action in signing his name when he was not present and knew nothing of it by telling person signing it that he approved.

7. Elections.—Candidate not entitled to office may contest election of opposing candidate.

M. C. BEGLEY and W. H. LEWIS for appellant.

J. M. MUNCY and J. M. BICKNELL for appellee.

Opinion of the Court by Turner, Commissioner— Reversing.

Appellee was the Republican nominee for sheriff at the November election, 1925, in Leslie county. Appellant was a candidate for the same office by petition filed under the statute at the same election.

Appellee was given the certificate of election, and appellant filed this action of contest. The only ground of contest necessary to consider is the allegation that appellee did not file with the county clerk his certificate of nomination as many as 45 days before the general election as is required by the statute.

The answer relied upon several defenses, but the only one necessary to consider is the affirmative allegation that appellant's petition for nomination filed with the clerk was not signed by such number of legal voters as is required by law.

This is a companion case to the cases of Lewis v. Mosely and Combs v. Dixon, decided by this court on May 28th last, and is a contest growing out of the same election considered in those cases.

The two opinions referred to are conclusive of every question made by either party upon this appeal so far as the law applicable to it is concerned, and under those two opinions it is perfectly clear that appellee, having filed his certificate of nomination within 45 days of the general election, had no right to have his name printed upon the ballot, and consequently no vote so cast for him at that election could have been properly counted for him. On the other hand, those opinions are conclusive of the fact that if appellant's petition, which she filed with the clerk, and by reason of which he caused her name to be printed upon the ballot, was signed by less than 100 legal voters of the county, her name also was

improperly placed upon the ballot and no votes so cast for her should have been counted for her.

As the trial court, therefore, erroneously decided that appellee was elected, we have left for consideration only the question whether appellant's petition was signed by as many as 100 legal voters of Leslie county, for if neither contestant nor contestee received any legal votes at that election, then under the rule stated and enforced in Combs v. Dixon neither of them was elected, and there is a vacancy to be filled according to law.

On the petition so filed by appellant there purports to be the signature of 107 legal voters of Leslie county, and appellee specifically in one paragraph of his answer attacks 35 of them for one reason or another, and alleges that there are only 72 names on that petition which should be counted, and that therefore it was insufficient to authorize the county clerk to print appellant's name on the ballot, even though that petition was filed 45 days before the election, as seems to be conceded.

In that paragraph of his answer attacking the validity of the petition filed by appellant appellee specifically alleges that Nancy Dixon, Altama Wooten, Susan Dixon, Mary Begley, Sallie Pennington and Nannie Turner, whose names appear on appellee's petition, did not sign the same, and an examination of the evidence discloses in each instance that the names of each of those persons were signed to the petition by another and during their absence. The only qualification to this is that the petition charges that Nannie Turner, whose name the pleading says appears upon the petition, did not sign the same, when as a matter of fact the name of no female with that surname appears on the petition except the name of Minnie Turner, and the evidence of her husband, Isaac Turner, shows that he signed her name during her absence, to the petition. Inasmuch, therefore, as the petition alleges that Nannie Turner's name appears upon the petition, and in fact there is no such name appearing thereon, and there is no female of that surname appearing except that of Minne Turner, it is obvious that the petition meant Minnie Turner, and from the evidence it is clear that parties treated that allegation as having reference to Minnie Turner. The only two Turners whose names appear upon the petition are Isaac Turner and Minnie Turner, the latter of whom is shown to have been the wife of Isaac, and therefore we shall treat the allegation as having reference to

Minnie Turner, and her name, together with the five other women named, must be eliminated from the petition in estimating whether the same was signed by 100 legal voters.

The pleading likewise charges that Bill Sizemore did not sign the petition, and the evidence of his wife Lula shows, without contradiction, that she signed his name to the petition at a time when he was not present, and for the same reason his name must likewise be eliminated.

The pleading charges that Ray Huff, who signed the petition, was not 21 years of age at the time, and the evidence of Ray Huff, which is the only evidence on the subject, shows that he did not know how old he was at the time, that there was no written record of his age known to him, and that he then considered himself to be only 20 years of age, although he expected to offer to vote at the election. There being no contradictory testimony as to his age and no written evidence, we are impelled to the conclusion that his own estimate of what his age was then must be accepted, and likewise his name must be stricken from the petition.

There are other names called in question, but inasmuch as we are convinced that the eight names mentioned must be stricken from the petition, and that makes the same insufficient under the statute, it is deemed unnecessary to pass upon any of the questions affecting the other names atacked.

But it is argued that as the evidence disclosed as to most of the persons whose names we have said should be eliminated from the petition, that they subsequqently told the respective persons who signed their names that they approved of it, that this was equivalent to a ratification by them of the placing of their names to the paper, and that therefore their names should not be stricken.

Section 1453, Ky. Stats., authorizes the placing of a name upon the ballot of a candidate for a county office "when petitioned so to do by electors qualified to vote for such candidates," and requires 100 such petitioners in the case of a county office. In another part of that same section it refers to the petitioners as "the subscribers," and in still another place it refers to "the signatures" to such petition. The conclusion from this language seems inescapable that the statute contemplated either a personal signature, or one made by

another in the presence of the person whose name was signed.

To say that one might validate the action of another in signing his name to such petition at a time when he was not present and knew nothing of it, would open a broad and smooth avenue for the perpetration of fraud; it would be equivalent to saying that one in the privacy of his home or office might sign the names of all the electors in a county without authority and in their absence, and if thereafter he could procure from a sufficient number of them a statement that it met with their approval, the petition would become a lawful one because of such ratification. We are unwilling to · hold that there can be any such ratification by an elector to validate such an unauthorized act.

The cases of Attorney General v. Clark, 26 R. I. 470, and Commonwealth v. Connelly, 163 Mass. 539, will be found to be interesting and instructive upon this question, particularly as they both deal with statutes similar to ours.

The contention that contestant could not maintain this action because she herself was not entitled to the office is disposed of in the case of Combs v. Dixon.

It results from what we have said that neither contestant nor contestee was elected to the office of sheriff, and the court should, therefore, have entered a judgment declaring neither of them elected, and that a vacancy existed to be filled as may be provided by law. Each party will be adjudged to pay his own costs.

The judgment is reversed that such a judgment may be entered.