## Horn v. Wells.
## Wells v. Horn.
(Decided March 23, 1934.)

JOE P. TACKETT, JOSEPH D. HARKINS and WALTER S. HARKINS for Horn.

EDWARD L. ALLEN, C. P. STEPHENS and C. C. TURNER for Wells.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

At the November, 1933, election, Sam Wells and Will Horn were rival candidates for the office of member of Floyd county board of education from subdivision No. 1. Horn received 557 votes and Wells 524. Horn qualified and was inducted into the office. Wells contested the election. He was held to have no right to the office because he had not received a majority of the votes cast; Horn was held to have no right to the office because he had violated the provisions of the Corrupt Practice Act. Both parties have superseded the judgment and both have appealed. Wells concedes he cannot prevail, still he may contest the election of Horn. See Hardin v. Horn, 184 Ky. 548, 212 S. W. 573; Morgan v. Revis, 215 Ky. 30, 284 S. W. 111.

There were several candidates for county school superintendent, and a brother-in-law of one of these on Saturday before the election called Mr. Horn into the courthouse, took him upstairs, took him back of the sheriff's office, and there handed Horn two packages of $1 bills containing something like $200. This man owed Horn nothing, he said nothing, Horn said nothing, the money was never returned, and the man says he was influenced to give Horn this money because Horn was for his brother-in-law for school superintendent. While nothing was said about his doing so, the average reasonable man knows that by the receipt of these two bundles of money Horn obligated himself to vote for the candidate for school superintendent favored by this man, which was a violation of section 1565b-3, Ky. Stats.

Horn did not include or mention this $200 in his post election expense account as required by section 1565b-6, and Horn when testifying refused to say what he had done with the money further than to say none of it was used to buy votes. As to buying votes, Bill Martin McCoy testifies that at Auxier on election day Julius Castle gave him $2 and told him to vote for Bill Horn and he did. Mr. Castle said he had some money he was spending on election day; he was for Mr. Horn, but spent no money for Horn and Horn gave him no money.

Castle refused to answer how much he spent. Mrs. Effie May testified:

"Julius Castle came up, and Bill Martin McCoy was standing there behind me, and Julius Castle walked up to him and handed him a bill of money, but I don't know how much it was, I didn't see how much it was, and he said, 'Put this in your pocket,' and he got him by the shoulder and told him to go on in and vote for Preacher Horn. And he stood there until the boy came back out and they left together."

Mr. Horn was the man referred to by this witness, as Mr. Horn testified that since 1920 he has been a minister of the gospel. Mr. Horn is not connected by evidence with this vote buying episode and this is merely put in to show what was going on. The failure of Mr. Horn to include the $200 in his post election statement is enough to sustain the judgment.

### Was There a Vacancy?

Horn practically conceded his violation of the Corrupt Practice Act, but is now contending there was in November, 1933, no vacancy on the board of education to be filled. In 1931 Horn was elected and in January, 1932, qualified as member of the board of education. In November, 1932, he received this letter:

"November 21, 1932.

"Mr. W. H. Horn,
"Auxier, Ky.

"Dear sir:

"A recent audit made of the books of the Floyd County Board of Education shows that you were paid $88.00 for supervising the construction of a school building at Mouth of Clear Creek. This amount was paid August 12, 1932.

"The Acts of the General Assembly of 1932 [chapter 77] provide that any member, on becoming interested in claims against the board, shall, without further action, vacate his office, and it shall be filled as now provided by law.

"In conformity with this law, I am notifying you that you have automatically forfeited your membership on the Floyd County Board of Educa-

tion, and that it will be necessary for you to refund the $88.00 illegally collected from said Board.

"I suggest that you see Mr. Stephens, who has a copy of Mr. Mills' report. You are at liberty to read this report.

"Very truly yours,

"James H. Richmond,

"Superintendent Public Instruction."

Mr. Horn refunded the $88, vacated the office, and Jeff Moles was elected in his stead. At the November election, 1933, Horn was a candidate to fill the vacancy, and on October 21, 1933, filed his pre-election expense account as such a candidate. Now, he says he was never removed; that the act of Richmond was a nullity; and that chapter 77 of the Acts of 1932, under which he was removed, is in conflict with section 51 of the Constitution of Ky., because of insufficiency of the title; and that he is now the legally qualified and acting member of the board of education from educational division No. 1, and will so continue until January 1, 1936.

### The Answer.

Mr. Horn is mistaken. There was a vacancy, for without discussing chapter 77, Acts of 1932, section 4426a-8, Ky. Stats., and section 141, p. 982, of 46 C. J. or section 227, Ky. Constitution, it is sufficient to say Mr. Horn himself created a vacancy by abandoning the office after receipt of that letter (see section 137, p. 980, of 46 C. J.), and by his delay and failure to take steps to vindicate his right to the office if he had any. See Nicholas v. U. S., 257 U. S. 71, 42 S. Ct. 7, 66 L. Ed. 133, and section 139, p. 981, of 46 C. J., and 22 R. C. L. p. 560, sec. 264. He is by his subsequent conduct estopped to now question the validity of his removal. 21 C. J. p. 1059, sec. 1.

There is a vacancy in this board of education, which should be filled by an appointment made by the remaining members, see section 4399a-1c, Ky. Stats., but if they cannot agree, then by the Governor, see section 3758, Ky. Stats. Supp. 1933, and Board of Trustees v. Kercheval, 242 Ky. 1, 45 S. W. (2d) 846.

Judgment affirmed on both appeals.

The whole court sitting.