# Norton et al. v. Letton et al.

(Decided Nov. 19, 1937.)

354

RICHARD P. DIETZMAN, WILLIAM CONLEY and O. R. BRIGHT for appellants.

B. S. GRANNIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The judge of the Nicholas county court, pursuant to the provisions of section 2554c-2 et seq. of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, called a local option election to be held throughout the county of Nicholas on May 8, 1937, which was done, and the measure carried by a large majority. Within the time provided by law—and on May 31, 1937—the three appellants and plaintiffs below filed this contest proceeding, pursuant to the provisions of section 2554c-13 of the same statutes, against the election commissioners of the county, and in their petition they attacked the validity of the election on numerous grounds. A demurrer filed by defendants to each of them was sustained, except as to the one charging failure of the sheriff to advertise the election as directed by statute. To that ruling defendants excepted. An answer and other pleadings completed the issues, and upon final submission the court dismissed the petition, complain-

ing of which plaintiffs prosecute this appeal. One of the grounds of contest, to which the court sustained a demurrer, was that in the city of Carlisle (one of the fifth class) there is an independent graded school, and that two board members for that school were elected by the people at an election duly held on Saturday, May 1, 1937, just seven days before the holding of the local option election, and that under the provisions of subsection (b) of section 2554c-4 of the Statutes supra, the local option election could not be held within thirty days—either before or following—the election of trustees or board members for the Carlisle independent graded school.

Learned counsel for plaintiffs have abandoned in this court all other grounds of contest stated in the petition—except the one just mentioned—as is evidenced by this beginning statement in their brief: "The sole question which the appellants desire to present on this appeal is whether or not the holding of a Local Option election in Nicholas County seven days after an election in the Graded School District of the City of Carlisle, a City of the Fifth Class, and the county seat of Nicholas county, for the purpose of electing the School Board of that City, was validly held or not, in view of section 2554c-4, Subsection (b), governing Local Option Election." To the determination of that question this opinion will be exclusively devoted.

The relied on subsection (b) of section 2554c-4, supra, says: "The election [local option] shall not be held on the same day that a primary or general election is held in the territory *or any part thereof,* nor within thirty days next preceding or following a regular political election." (Our italics.) Without extended argument we will say that we interpret that provision as forbidding the holding of a local option election on the same day that a regular political election is held in the territory covered by the local option election, or any part of that territory, nor can it (local option election) be held in such territory within thirty days of any such regular political election or within any part of it. With that interpretation settled we will proceed with the performance of the task that the sole submitted question imposes upon us—it being the ascertainment of what was meant by the Legislature in employing the phrase "a regular political election," as embraced in the statute.

It is conceded by all parties that the word "election," as employed in the statute, means only the appointed occasions at which a choice is made by the legal voters within the territory covered by the election, and not to a choice made by a representative body, either legislative or administrative in character, and partaking of the nature of an appointment. Such elections by the qualified voters, as is expressly stated in section 147 of our Constitution, "includes the decision of questions submitted to the voters, as well as the choice of officers by them." Elections by the people are now divided into "Primary" elections and "General" elections—the first of which is exclusively party affairs and confined to the naming of party candidates to be voted for at the next or succeeding general election for such officers. The purpose to be accomplished by the holding of a primary election goes no farther than that. The very phrase "primary election" appears to have been adopted for convenience in order to distinguish it from a regular election at which officers are chosen with governmental duties to perform. A more appropriate designation of the processes of choosing party candidates, perhaps, would have been "primary selection" instead of "primary election," for such is its nature and purpose. However, the Legislature, as we have seen, in providing for a local option election, prescribed that it should not be held on the same day for the holding of either such primary or general election within the same territory, or within any part of that territory; nor within thirty days of the holding of either a primary or general election, either in the entire territory or in only a part of it.

Elections participated in by the people are furthermore divided into "general" and "special" elections. The one (general election) is for the purpose of selecting "an officer after the expiration of the full term of the former officer," while the other (special election) may be one to fill a vacancy on a day other than the prescribed regular election day and before the arrival of the time of the general election for a full term, or to vote upon a measure that may be submitted to the people under provisions of law—but upon no fixed day—and in which cases the election is always required to be advertised and prescribed notices given for its holding. See the definition given in 15 Cyc. on page 279, which is but a restatement of the definitions as

made by all courts and text writers. The text in 9 R. C. L. 978, sec. 3, clearly points out the same distinction between a general and special election, saying in part: "Any election which is not regularly held for the election of officers or for some other purpose which shall come before the citizens at regular fixed intervals is a special election"; whilst general elections are those held upon fixed dates for the choosing of officers for regular periods of time and at which the voters may exercise their choice by casting their ballots. On page 991 in section 13 of the same volume the text in dealing with the question as to when notice of an election is necessary says: "As to general elections it has been well established that the fixing of the time for the election either by law or by the Constitution is in itself notice which all electors must heed. * * * Where, however, the time for holding an election is not prescribed by law, but is fixed by the officer vested with authority to call it, the voter cannot be expected to have or to take notice thereof unless notice is given or a proclamation issued." See, also, 20 C. J. 56, sec. 3. Further text citations are unnecessary and a reference to the annotated notes under the various applicable sections of our statutes and Constitution will demonstrate that we have approved in many opinions the interpretations and definitions contained in the texts cited.

In this case the election—upon the same day of which or within thirty days thereof a local option election is forbidden by the statute—was one for the election of officers, i. e., members of the independent graded school district board embraced by the city of Carlisle, which is one of the fifth class. We have held in numerous cases that such positions (i. e., trustees of a school district or members of a school board) are not only officers, but are state officers. They administer and function in the administration of one of the most cherished governmental functions, to wit, the education of the youth of the land. Under the provisions of section 155 of our Constitution the election at which they are chosen, as well as elections appertaining to other school matters, are not embraced by sections 145 to and including section 154 of that instrument. On the contrary, that section (155) expressly provides that "said elections [school trustees and other school elections] shall be regulated by the general assembly, except as otherwise provided in this Constitution." Consequent-

ly we held in the case of Clark v. Board of Trustees of Dawson Springs Graded School District, 164 Ky. 210, 175 S. W. 359, and many others following as well as preceding it, that a graded school election might be held on a day other than the regular November election day for the holding of all other regular elections by section 148 of the Constitution, which is the first Tuesday after the first Monday in November of the year in which the election is to be held. Therefore, under the Constitution the Legislature is at liberty to fix the time for the *regular* or "general" election of school trustees on a day other than the first Tuesday after the first Monday in November. By section 4399-27 of our Statutes, supra (it being a part of chapter 65, article 5, of the Acts of 1934), provision is made for the election of such school officers, and the day for its holding is on the regular November election day, but with this proviso: "That any independent school district embracing a city of the fifth class may, at the discretion of its board of education, hold its election of board members at its public school building on the first Saturday in May." Pursuant to that authority it appears in this case that the board, prior to the election of members thereof on May 1, 1937, had adopted the first Saturday in May as the regular election day for the selection of members to that board. After the school board in this case had so designated the first Saturday in May for the holding of the election, it became fixed until legally altered as the regular election day for that purpose, the same as if it had been done by the Legislature in the statute, since the constitutional provision supra, with reference to school elections, left it to the Legislature to provide for them. In doing so in the 1934 statute (section 4399-27) the Legislature made it optional with independent school boards whose school districts were embraced by cities of the fifth class, to hold such regular elections, either on the constitutionally designated regular election day for selection of other officers, or on (an alternatively fixed day) the first Saturday in May after the expiration of the terms for which prior members had been elected.

It is not contended that the Legislature was without authority under the Constitution to so provide, and we have been unable to discover any such constitutional inhibition. The situation, therefore, we repeat, is the same as if the Legislature had designated the first Sat-

urday in May for the holding of the school election here involved within the territory of the independent graded school district embraced by the city of Carlisle. If the Legislature had so provided, there certainly could be no successful contention made that such an election would not be a regular one for that purpose. But, for the reasons stated, we think that the option given by the Legislature does not militate against that conclusion. We will therefore determine the case upon the premise that the election of board members of the graded school district within the city of Carlisle in this case was a regular election day for that purpose, and no notice was necessary to be given of the holding of that election, since the prior designation of the day by the board rendered it a fixed day for that purpose and to remain so until that order should be changed by the board. But whether or not there should be notice given of that change presents a question that is not now before us and, of course, will not be determined.

The fact that there are different statutory provisions made as to the places where, and the manner of conducting and certifying to the results of school elections, from those provided for the election of other governmental officers (as is advanced in the dissent hereto), can have no material effect upon the question involved—which is, whether or not the particular school election involved is a "regular political" one? The differences pointed out as relating to such matters—with reference to the manner of holding (ballots or no ballots, emblems, etc.), the place of holding, and other regulatory matters, of the two classes of officers—are those made or permitted to be made by the Constitution in its sections 148 and 155. By the former the day of the election therein dealt with is fixed, but by the latter (section 155) such fixing, and other provisions relating to elections generally, do not apply to the election of *school* officers, or to any kind of school elections. Provisions for the latter class of elections are expressly left to the legislature by that section (155), and when it (legislature) makes provisions pursuant to that power they become regular and general ones as applicable to the class of elections dealt with, and the elections held thereunder are *regular* and *general* ones, as contradistinguished from "special" elections; or "political" *party* elections, if there be such within the jurisdiction for the choosing of party organization of-

ficers; but there are at present no statutory provisions therefor in this state.

The next question is—whether the school election referred to, though a regular one as we have determined, was a "political" election within the meaning of subsection (b) of section 2554c-4, supra? Mr. Webster gives three definitions of the word "political": "1. Of or pertaining to polity, or politics, or the conduct of government, referring in the widest application to the judicial, executive, and legislative branches; of or pertaining to, or incidental to, the exercise of the functions vested in those charged with the conduct of government; relating to the management of affairs of state; as, political theories. 2. Having, or conforming to, a polity, or settled system of administration; as, a political body or government. 3. Of or pertaining to the exercise of the rights and privileges or the influence by which the individuals of a state seek to determine or control its public policy; having to do with the organization or action of individuals, parties, or interests that seek to control the appointment or action of those who manage the affairs of a state; as, his political affiliations were with the Republicans." That definition is in substance the same given by other lexicographers, both literary and legal. It will be seen that in neither definitions, 1 nor 2, is there the slightest reference made to the views, or governmental policies, advocated by groups of voters forming what is commonly designated as "political parties." On the contrary the definitions so given are much broader, and in such broadened scope there is included, as well as emphasized, governmentally declared policies conforming to a settled system of administration of the government, or any of its subdivisional units. It embraces all participations (elections) whereby, whereat, and wherein legal voters may participate in the selection "of those who manage the affairs of a state," or whereby the voters may exercise the function of participating in the choice of officers or measures that they may wish to be installed or inaugurated in the conduct and administration of their government.

Following such definitions the Supreme Court of the state of Wisconsin in the case of In re Kemp, 16 Wis. 359, 382, defined the word "political" as meaning that which pertains to the government of a nation and not to be narrowed so as to be exclusively applied to

groups and parties advocating certain political views. or policies. The Supreme Court of the state of Arizona. in the case of Sorenson v. Superior Court in and for Maricopa County, 31 Ariz. 421, 254 P. 230, 231, had. before it the same question now under consideration,. i. e., the nature and character of a school election, and whether or not provisions of general election laws could be made applicable to it. In giving an affirmative answer to the latter question the court held that a. school district was ordinarily a subdivision of a county, and that it (school district) was a "'political' subdivision." It then proceeds to define the word "political" as applicable to school districts, and in doing so said: "'Political' has been defined by Webster as 'relating to the management of affairs of state; of or pertaining to or incidental to the exercise of functions. vested in those charged with the conduct of government.'" It then refers to the case of Freel v. School City of Crawfordsville, 142 Ind. 27, 41 N. E. 312, 37 L. R. A. 301, in which that court held that "such subdivisions [school districts] then, as counties, townships, and school corporations, are instrumentalities of government, and exercise authority given by the state." The Arizona court then continues by saying: "Indeed, we think that the education of the children of the state is one of the highest, if. not the highest, *political* function which it has." (Our italics.) The court then cites. the case of Landis et ux. v. Ashworth, 57 N. J. L. 509, 31 A. 1017, and inserts from the opinion in that case this language: "School districts are formed for the purpose of aiding in the exercise of that governmental function which relates to the education of children, and to that end the legal voters of each district are intrusted with specified powers of local government, and the trustees whom they elect are made a body corporate to represent the district and its inhabitants. These characteristics mark them as *political* organizations." (Our italics.)

The case of Lydecker v. Commissioners, 41 N. J. L. 154, is also cited to the same effect and an approving excerpt is also taken from that opinion. In the case of McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581, we dealt extensively with the term "election" as used in our Constitution and statutes, and distinctly pointed out that the process of choosing officers. for the administration of government by the people—

which is called an election—is the exercise of a governmental right pursuant to a political policy adopted by the particular government.

We have also held in the cases of Ridings v. Jones, 213 Ky. 810, 281 S. W. 999, Horn v. Wells, 253 Ky. 494, 69 S. W. (2d) 1011, and others that the provisions of our Corrupt Practices Act (Ky. Stats., sec. 1565b-1 et seq.) relating to candidates for election to school offices applied to them, although they are not required to be nominated at a primary election. In so holding we necessarily concluded that the object and purposes sought to be accomplished by the Corrupt Practices Act were as essential and necessary in the election of school officers as it was in the election of any other governmental officers. That object and purpose was to render such elections as free from contaminating influences, whereby the unfettered choice of the people might be defeated, as possible. The same purpose, we are confident, was entertained by our legislature when it made provisions supra for local option elections, and wherein it forbade their holding on the same day or within thirty days before or after the elections therein designated. That purpose was that the elections so designated—held near to or upon the same day of the local option election—should not be unduly influenced by the pending or approaching local option election, or vice versa. That apprehension was based upon the well-known fact that political trading and swapping of votes might be indulged in by advocates or opposers of the pending measures, or candidates for election, and a result obtained by and through such polluting influences and practices that would be an unfair expression of the people had they not been so influenced.

Of all the elections in the entire catalogue of them that should be kept free from any such possible contamination, it is a school election wherein officers are chosen to administer the gracious provisions of our public school system to the end that the rising generation and all future ones might become educated. To deny the contention made by appellants and to uphold the argument made by appellees would permit the holding of a local option election on the *same* day that a school election is held under the same provisions that the one herein involved was held, since there is the same mandate contained in the statute against holding elections on succeeding and preceding days (within the

thirty day limit )as there is against holding the elections on the *same* day. If they were held on the *same* day, it requires no astute prognosticator to prophesy what would take place on the election day of the corrupting nature hereinbefore described.

We are not called upon to determine whether or not such prejudicial and diverting influence operated upon the involved school election in this case, since the legislature settled that question so far as our authority extends by the provisions it enacted in the local option statute, supra, and under a well-established rule we are not authorized to modify or curtail those provisions. We have therefore concluded that there is no alternative course open to us than to hold that the school election in this case of members of the educational board of the independent graded school embraced by the fifth class city of Carlisle, Ky., was and is a "regular political election" within the meaning and contemplation of the local option statute, and that the instant local option election having been held seven days after the school election, covering a part of the territory of the entire county of Nicholas, was held on a forbidden date. Our duty requires us to follow that only alternative.

Wherefore, for the reasons stated the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.

The whole court sitting.

Judge Baird, dissenting.

I am unable to agree to or accept the construction and conclusion reached by the majority of the court of the meaning of section 2554c-4, Kentucky Statutes, relating to the time in which local option elections can be legally held, as applied to the facts in this case.

The local option election under consideration was held in Nicholas county, Ky., on May 8, 1937, and the measure was carried by a decisive majority of the voters. It is insisted that the election was void because a school trustee election was held in the city of Carlisle, the county seat, it being a city of the fifth class, on the 1st day of May, 1937, within 30 days of the local option election held throughout the county. That portion of the local option law that is applicable to the question is subsection (b) of section 2554c-4, Kentucky Statutes, which reads as follows: "The election shall not be held on the same day that a primary or general election is

held in the territory or any part thereof, nor within thirty days next preceding or following a regular political election."

The main point to be settled in the beginning is: what did the legislature mean by that section? To make the matter clearer, I will state it in this way: The local option election shall not be held on the same day that a primary election is held, or a general election is held, in the same territory, or any part of the same territory, nor shall a local option election be held within 30 days preceding or following a regular political election that might be held. It occurs to me that the language in that section is so simple and the meaning so clear that the ordinary man of the street—in fact, the man of ordinary "gumption"—would understand it, and, in fact, know the kind of election that was in mind when the law was enacted. The election of trustees of the independent graded school district held on the 1st day of May, 1937, in Carlisle, a city of the fifth class, was under section 4399-27, Kentucky Statutes. It provides (1) that in even years, an election for a board of trustees shall be held on the regular election day in November, which is the same day for the holding of all general elections in the state, or any subdivision thereof. However, the same section further provides as follows: "provided that any independent school district embracing a city of the fifth class may, at the discretion of its board of education, hold its election of board members at its public school building on the first Saturday in May, the election to be held by three officers appointed by said board of education and the expenses of such district election to be paid from the treasury of such school district, and in all other respects the provisions of this act relating to holding elections for board members shall apply."

It will be observed that in even years the election must be held at the time of the regular election in November; in fact, the date, as well as the process of holding, is fixed. No notice, resolution, or order is necessary to be made to inform the voters or the public in general of the holding of the election in even years. The election in that respect stands as any other primary or general election of the state, or in any part thereof, but when the board of trustees of a fifth-class city deem it necessary, they may in their discretion call an election. In this case they exercised that discretion by mak-

ing an order calling an election to elect trustees of the independent graded school district on the first Saturday in May, the day fixed by the statute.

It was the conclusion of the majority of the court that this election was general and political, in the meaning of the section applicable to the holding of the local option election within 30 days of this independent school election. Such a conclusion is not sustained in my judgment by the statute by any proper method of reasoning. It must be conceded that if the election held on the 1st day of May, 1937, in the city of Carlisle, was a special election, or a non-political election, then in the meaning of section 2554c-4, a local option election held on May 8th would not be void. The election held on May 1st by the board of trustees was, in an extraordinary and comprehensive sense, a special election. In no event could it have been held under the statute in May, or at all, without the trustees exercising the discretion given them by the statute.

Primary, general, and political elections, in the meaning of the statute, are the elections fixed by the statute, not only as to time of holding, but under the same machinery, binding all political parties now in existence, or that may be later organized. No notice to the public of those elections is necessary, either to the manner of holding, or as to the officers, before whom the elections are held, or in any other respect. In the election in Carlisle, none could have been conducted in May, except as ordered by the board of trustees. This election was special (1) because it was held at the school house and not at the regular polling place; (2) special, because the election was held by three officers instead of the number necessary under the general election law; (3) special, because these officers are chosen by the board of trustees and not by the regular processes of general election; (4) special, because the election is under the control and the auspices, exclusively, of the board of trustees, and not of the regular and controlling authorities in general or primary elections; (5) special, because the expense of the election is paid out of the school fund; (6) special, because the returns of the elections are made to the school board and not to the election commissioners; (7) special, because the ballot boxes are opened and the ballots counted at the polls where the vote was taken, and not at the county seat; (8) special, because the ballot does not contain a device;

and (9) special, because there is no party law or any other law, requiring party affiliation or party device or emblem.

Nothing can be said that is reasonable, to make the election general or political, except that the law requires the called election to be held on the first Saturday in May.

The word "political," as many other words in the English language, has many shades of meaning, made so by the literati of our land, and other lands. In the instant case, the words "political" and "general" were not used in a generic sense, but in the sense ordinarily and commonly used by ordinary men and women. The word "political" was used here in the sense defined in Webster's New International Dictionary, as follows: "relating to the management of affairs of state; as, *political* theories." The word "general," in the ordinary sense, is defined in the same dictionary, as follows: "the whole; the total; that which comprehends or relates to all, or the chief part; a general proposition, fact, principle, etc.;—opposed to *particular*"; that is, opposed to special.

Bond issues, referenda of city ordinances and filling vacancies in offices, are special, because they are called at the instance of authority, and may be held upon any day chosen and selected by that authority. Such elections are special even though held under the machinery set up for regular elections. If elections held on the same day fixed for general elections, as in November each year, under the same machinery, as in general elections, are special, then by the same logic, elections held on a certain day fixed by law, but under different machinery of a general election, and when it has been called by an authority, in the exercise of its discretion should be declared a special election.

The time for holding an election on a road bond issue, or to fill a vacancy in the General Assembly, may be fixed for the same day as general elections. That does not prevent it from being a special election. Houston v. Boltz, 169 Ky. 640, 185 S. W. 76; Furste v. Gray, 240 Ky. 604, 42 S. W. (2d) 889.

In Words and Phrases, First, Second, Third, and Fourth Series, Special Election, it is disclosed that the courts have regarded "special election" to be any election except those definitely and specifically established

or provided for by statute to be held at regular intervals. As we have heretofore suggested, "a regular election is an election recurring at stated times, fixed by law; while a special election is one arising from some exigency outside the usual routine." State v. Andersen, 110 Or. 1, 222 P. 585, 587. In determining whether an election is special or general, regard must be had for the subject-matter, as well as the date of the election, and if an election occurs throughout the state, uniformly by direct operation of law, it is a general election, but if it depends on employment of special preliminary proceedings, peculiar to process, which may or may not occur, and the election is applicable only to a restricted area, less than the whole state, it is a special election. Norton v. Coos County, 113 Or. 618, 233 P. 864, 866.

Again, I am of the further opinion that the election for school trustees is not a political election. It is a familiar and well-accepted rule of statutory construction that words, as we have heretofore stated, are to be regarded in their ordinary sense. The statutes throughout recognize political parties and provide that nomination for office must be made by political parties. Such parties choose the election commissioners, and the election officers, and actively participate in the whole thing. In the minds of the people they are political elections. It will be observed that the conjunction "nor," in the local option statute, connects the last phrase providing that no election may be held within 30 days of a "political or regular election" with the phrase, which prohibits a local option election being held on the same day as a primary or general election. Such elections are necessarily and strictly political. School elections, like the one held in the city of Carlisle, are not political.

The legislature has used every conceivable device to take school trustee elections out of politics. No party nomination is permitted; no political qualification is required. All political emblems are prohibited. No political party participates in the election as such.

There are reasons why the legislature never contemplated an election, held other than on the primary or general election day, should control the time of the local option election. Petitioners for such an election, and the county court in ordering the same, by reading the statute, and using their ordinary sense, as to the meaning of words, are assured that any day may be

**368**

selected for the election other than in July or August, October or November. If a school board choose to hold an election of its trustees on the first Saturday in May, thereby constitute it a general or a political election, then there is no assurance on the part of those calling a local option election that it will be valid if it should be called or fixed for any day in either April or May. To illustrate: If on January 5th a local option election should be called for April 5th, and it should happen that on April 4th, a graded school board for a district containing a fifth-class city should meet and order an election of trustees to be held on May 1st, then the entire action in calling and holding the local option election would be void. It is not conceivable the legislature had in mind such an anomalous condition, yet such is the effect of the majority opinion.

No local option election can be held within 30 days before, or immediately after, the second Tuesday in November or the first Saturday in August. Thus, there are excluded from the time of holding such election almost the entire months of October and November, July and August, and a portion of September. Under the majority opinion April and May are excluded in many counties. It lies within the power of the trustees of independent graded schools embracing fifth-class cities. If a board chooses to exercise that power to call a school trustee election, county local option elections cannot be held in such counties in April, May, July, August, October, November, and part of December. No such an idea ever pierced the mind of the legislature when this law was enacted; consequently, I am of the opinion that the judgment of the chancellor was correct and should have been affirmed.