## Lively et al. v. Brown, Sheriff, et al.

March 18, 1947.

Rehearing denied June 17, 1947.

T. C. Carroll, Special Judge.

J. J. Kavanaugh for appellants.

Joseph E. Stopher and James R. Watts for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

In a local option election held in the Garnettsville precinct in Meade County on September 28, 1946, the drys received 163 votes and the wets 129 votes, making a majority of 34 votes for the drys. The appellants, plaintiffs below, filed a contest wherein they set up numerous grounds to have the election set aside. A special judge sustained demurrers to several paragraphs of the petition and heard evidence on others. The final outcome of the action was that the petition was dismissed. Eight reasons are given on this appeal to have the judgment of the lower court reversed.

The first contention is that the election was void because the Garnettsville precinct has never been given a definite boundary. This contention is an afterthought and was not raised below. Furthermore, in their petition the appellants stated that they were residents of that precinct and an election was held therein. The precinct has been in existence for more than 100 years and has well-defined boundaries in the minds of persons residing therein. The situation pertaining to this precinct is doubtless similar to that pertaining to hundreds of precincts throughout the state.

The second contention is based upon the theory that the congressional election held on November 5, 1946, was not a general election. It is contended that the registration books should not have been closed until 59 days before the November election in 1947. Reliance is placed upon the case of Davis, County Judge, v. Henderson, 104 S. W. 1009, 1011, 31 Ky. Law Rep. 1252, wherein it was said: "The next question involved is: What is meant by 'the next preceding general election'? In view of the fact that nowhere in the Constitution or statutes is any attempt made to define a general election, the solution of the question is not altogether free from doubt. As there is usually greater interest, however, in local contests, and consequently a larger vote cast in elections for state or county officers, than in congressional elections, and the vote cast in the former a fairer test of the strength of the petition, we are of the opinion that the Legislature meant the next preceding general election at which officers for the state or county embracing the district in question were elected."

In the recent case of Norton v. Letton, 271 Ky. 353, 111 S. W. 2d 1053, it was said that a general election is for the purpose of selecting an officer after the expiration of the full term of the former officer, while a special election is one which is held to fill a vacancy on a day other than the prescribed regular election day and before the time of the general election for a full term or to vote upon some special measure. We think the rule laid down in the Norton case to be sound, and if the Davis case be considered as in conflict therewith it is overruled to that extent. We do not see how it can be contended seriously that there is not a general statewide election held in Kentucky each November.

The third contention is that the allowance of 143 days out of a year for registration purposes is an unreasonable restriction. Reliance is placed upon the case of City of Owensboro v. Hickman, 90 Ky. 629, 14 S. W. 688, 10 L. R. A. 224; Early v. Rains, 121 Ky. 439, 89 S. W. 289, 28 Ky. Law Rep. 415; and Perkins v. Lucas, 197 Ky. 1, 246 S. W. 150. In the first case registration was allowed only three days out of the year. In the second an election was called for April, 1905, while there had been no registration allowed since October, 1904. In the last case registration was restricted to. one day in the entire year. Clearly those cases are distinguishable, and, unquestionably, the restriction of registration to 143 days out of the year as now provided is not unreasonable.

The fourth contention is that the repeal of the provision of the purgation law applying to territory outside cities of the first class, KRS 117.450(2), 1944 Compilation, and leaving in effect a provision applying to cities of the first class, KRS 117.510(3), was an unreasonable discrimination in favor of the voters outside such cities. The appellees contend that this is a general law which comes within the rule of Allison v. Borders, 299 Ky. 806, 187 S. W. 2d 728. In the old section applying to territory outside cities of the first class purgation was made by the county clerk, which would allow an opportunity for unreasonable or arbitrary actions on the part of that officer. In the case of a city of the first class the purging is done by a board, and there are obvious reasons for maintaining purgation provisions in a large metropolitan area as in contrast with less populous ones.

The fifth contention is that the ballot box was unlocked and the election thereby invalid. There was no charge of fraud, and the only evidence is that there may have been one lock off the box. We deem this contention without merit.

The sixth point is that the certificate of the election results was not filed with the county clerk or entered upon the record of the county court by order of the county judge as required by law. There was a delay in entering the order, but this was against the drys rather than the wets.

The seventh argument is that there was intimidation at the polls such as to deny a free and equal election. Elections of this type are usually bitterly fought, and there is much activity around the polls. Doubtless there are few people who enter the polls in a wet and dry election who have not definitely made up their minds how they intend to vote. In the case at bar there is no showing of intimidation on the part of any voter, so we deem this ground to be without merit.

The last contention is that 95 voters residing in precincts other than the Garnettsville precinct were permitted to participate in the election. The appellants filed 364 registration cards of voters in the Garnettsville precinct. They contend that 95 of them show that the voters live in Hardin County. These cards merely show the names and addresses of the persons listed thereon and often show only a rural mail route. This does not establish that they live in Hardin County. Furthermore, in the petition the appellants charged that these 364 persons were ineligible to vote by reason of their failure to vote for more than two consecutive years.

On the whole we think the judgment should be and it is affirmed.